(50 South. 449.)

No. 17,469.

NAVAILLES v. DIELMANN.

(June 23, 1909. Rehearing Denied Oct. 18, 1909.)

1. MUNICIPAL CORPORATIONS (§ 705*) — STREETS—INJURIES TO PEDESTRIANS—COLLISIONS—NEGLIGENCE.

Where a beginner in the management of an automobile concentrated his attention on a curve which he was executing, and not on what was ahead of him, and did not see a pedestrian until he was right on her, and he then failed to stop, as he could have done, within a foot or two, but ran his machine some eight feet after he had knocked the pedestrian down, the juridical cause of the accident was his inattention to what was ahead of him in the street, combined with his lack of skill in the management of the machine, authorizing a recovery.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 705.*]

2. MUNICIPAL CORPORATIONS (§ 705*)— STREETS—INJURIES TO PEDESTRIANS—COLLISIONS—NEGLIGENCE.

Where a pedestrian, struck by an automobile, had time to run from a point 3 feet from the east gutter of a street about 29 feet wide to a point beyond the middle of the street, and beyond the automobile, which was on the west side of the street, a competent operator had ample time in which to stop, and the cause of the accident to the pedestrian was the fault of the operator in venturing on the streets without knowing how to make an emergency stop.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 705.*]

3. MUNICIPAL CORPORATIONS (§ 705*) — STREETS—INJURIES TO PEDESTRIAN—VOLUNTARY ACTS—ACTS RESULTING FROM TERROR.

The act of a pedestrian in running in front of an automobile as a result of terror, caused by discovering the automobile near him, is not voluntary, and it is not negligence.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 705.*]

4. MUNICIPAL CORPORATIONS (§ 705*) — STREETS — INJURIES TO PEDESTRIAN—COLLISIONS—NEGLIGENCE.

Where a pedestrian, because of terror, ran in front of an automobile, and the operator saw the danger to the pedestrian in time to avoid the accident by stopping, but he failed to do so, and ran over the pedestrian, the operator was liable under the last chance doctrine.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 705.*]

5. MUNICIPAL CORPORATIONS (§ 706*) — STREETS — COLLISIONS — PETITION—SUFFICIENCY.

The petition in an action for injuries to pedestrian, struck by an automobile, which shows the condition of the street where the collision occurred and the surrounding circumstances, and which alleges that the operator of the automobile was running it in a careless and reckless manner, and neglected to stop it, is sufficiently specific.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 706.*]

6. APPEAL AND ERROR (§ 1004*)—REVIEW—VERDICT—APPROVAL BY COURT—EXCESSIVE DAMAGES.

A woman 60 years old was knocked down by an automobile and dragged. Her thigh bone was fractured in two places. She suffered excruciatingly for months. The injury would cause her to hobble with a stick, instead of walk, for the rest of her life. She was put to large expenses. *Held*, that a verdict of $3,250, approved by the trial judge, would not be disturbed as excessive.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3944–3947; Dec. Dig. § 1004.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Miss Felicie Navailles against William H. Dielmann. From a judgment for plaintiff, defendant appeals. Affirmed.

Robert Legier and Walter Gleason, for appellant. Carroll, Henderson & Carroll, for appellee.

PROVOSTY, J. Plaintiff, an old lady of 60, was run over by an automobile owned and driven by defendant, and she sues in damages. The following is a diagram of the locality:

The streets are asphalted. Street A is 26 feet 9 inches wide; the others are 29 feet wide. From this must be subtracted the width of the gutters. For convenience, we have changed the names of the streets, and in mentioning directions will assume that the diagram has been drawn as maps are; that is, the top north, the bottom south, etc. The accident occurred in broad daylight, when plaintiff and the automobile were the sole occupants of the street.

We attribute it to the peculiar combination of the streets at the place where it occurred. This peculiarity could be fully realized only if an automobile, drawn to scale, were made to follow on the diagram the same course as defendant did; that is, out of street A, then to the right, and east, through the open space, then to the left and northwest into street B.

For doing this the automobile has to make what is called "the reverse curve"—first to the right, towards the east, and then to the left, towards the northwest. An autoist testified that he travels this course every day, and that this corner is a most dangerous one. He was not allowed to give the reason of the danger; but it results, we imagine, from the difficulty of executing this "reverse curve" within the contracted space. The evidence does not show along what line defendant traveled in effecting these curves. The diagram is not faithful, in that it makes the streets appear wider than they really are by the entire width of the gutters, thereby making the curves appear easier.

Plaintiff was on foot, going east across street B along the line of the north sidewalk of street C. She had almost got across —was within about three feet of the iron plate over the gutter on the east side of street B—when her attention was for the first time attracted to the automobile, she says, by the screams of the persons in it. Defendant and those who were with him deny that there were any screams, but say the horn was being tooted. It will be observed that the automobile was approaching her from behind. Defendant would make it appear that the machine was not pointing towards her at the moment she turned her head and saw it, but had already completed the turn to his right, towards the east, and had also completed the turn to his left, towards the northwest, and was pointing northwest at an angle which would have cleared her by 10 feet had she simply stood still where she was, but that, instead of doing this, or continuing her way, she turned back, and ran across the path of his machine. As a matter of fact the old lady ran back, and had reached a point nearer to the west than to the east gutter of street B, when she was run over. We are satisfied that the explanation of this sudden turning and running back is that when she looked back the machine had just come out of street A, and was in the act of turning

towards the east, and was therefore pointing straight for the path ahead of her; so that she imagined (very foolishly, no doubt) that, if she kept on, she would be run over. Constant practice in steering clear of pedestrians and vehicles coming towards us, or making towards our path at an angle and at a rate that will bring on a collision if we do not change our course, has so trained the eye of every grown person—especially of those living in cities, where the avoidance of collisions is more constantly practiced—that we are all of us—old ladies and all—pretty good judges of what line is being followed by a body moving towards us, or so as to intercept, or converge with, our own line of progress. The old lady turned because she saw that the machine was pointing for the path ahead of her, and she instinctively recoiled from this danger, not realizing that she could easily avoid it by simply taking a step or two forward, or, rather, fright bereaving her of all notion of her surroundings. And that is what she says. All she knows is that, on seeing the automobile coming upon her, she became frightened and ran. Defendant's statement, that he had completed the reverse curve and was actually pointing northwest when the old lady first became aware of his presence and turned and began to run back, does not accord with the fact that the old lady's hearing was good and that the street was silent, save for the horn of the machine and the other noises which the evidence shows it makes. Indubitably, this automobile startled the old lady the moment it emerged from street A, with its tooting and other noises, just back of her right shoulder.

Defendant was a beginner in the management of an automobile. We are satisfied his whole attention was concentrated on "the reverse curve" which he was executing—perhaps for the first time in his life in so contracted a space—and not on what was ahead of him, and that he never saw the old lady until he was right upon her, and then lost his head. For making this difficult corner he had slowed up. At the rate he was moving, and with the pavement dry as it was, he should have stopped within a foot or two. Instead of this, he ran some eight feet after having knocked the old lady down, and, even then, succeeded in stopping his machine only by running it to the curb. He says that for thus running to the curb he restored the power without having stopped at all. But the instinctive movement of the driver of a vehicle that has a human being under its wheels is to stop in as short order as possible.

According to the foregoing, the juridical cause of the accident was defendant's inattention to what was ahead of him, in combination with his lack of skill in the management of his machine. But defendant is no better off if his own statement is accepted—that he was attentive all the time to what was ahead of him, and saw the old lady rush towards the path of his machine and nearly get by, so that what struck her was the fender on the left, or west, side of the machine, and that he turned his machine to the right, or east, in the hope of avoiding her, that is to say, of letting her get by in safety, and that he was then west of the median line of the street, and that his machine was going as slowly as he could make it go.

The situation, then, is that, if the old lady had time to run from a point three feet from the east gutter of the street to a point beyond the middle of the street, and even beyond the machine, which was on the west side of the street, defendant had ample time in which to stop his machine; for his own statement, and that of others, is that an automobile going thus slowly may be stopped within a foot or two. The juridical cause of the accident, then, becomes the fault of defendant in venturing upon the streets in an

automobile without knowing how to make an emergency stop.

The act of the old lady not having been voluntary, but simply the result of terror, does not constitute negligence on her part. In that connection the case is covered by the last chance doctrine, and is precisely analogous with that which this court had to deal with in Ross v. Sibley, 116 La. 789, 41 South. 93, of which the syllabus reads:

"While plaintiff was negligent in attempting to cross the defendant's track at a sharp curve, without stopping to look and listen at the proper time and place, the company will be liable when the evidence shows that the engineer saw the danger in time to avoid the accident by sounding the whistle or applying the brakes."

In the instant case defendant saw the danger in time to avoid the accident by stopping his machine.

"When an automobile, being driven 20 or 25 miles an hour, came meeting plaintiff, who, when the automobile was 50 feet away and coming directly towards him, pulled the horse he was driving to the left, instead of to the right, it was held that in such circumstances negligence could not be imputed to plaintiff as matter of law, because he was confronted with a sudden danger, and his failure to exercise what might seem to others the best judgment was not necessarily negligence." McFern v. Gardner, 121 Mo. App. 1, 13, 97 S. W. 972, 975.

"If an automobile comes upon a boy under circumstances calculated to produce fright or terror, and such fright causes an error in judgment, by which he runs in front of the automobile, he is not guilty of contributory negligence." Thies v. Thomas (Sup.) 77 N. Y. Supp. 276.

Defendant's negligence does not consist in his having caused the old lady's fright, for, if she had received her injuries from having, in her fright, precipitated herself into the gutter, defendant would not have been responsible; but it consists in not having stopped his machine when he had a chance to do it.

"It is incumbent upon a person driving an automobile along a highway to take notice that motor cars are, as yet, usually strange objects to horses, and are likely to startle the animals when driven up in front of them at a rapid rate."

"Where the driver of an automobile sees, or by the exercise of reasonable caution could see, that the horses drawing an approaching carriage are unmistakably frightened, and are forcibly crowded off the road, ordinary care requires him to slow up, stop his machine, or do whatever is reasonably required to relieve the persons in the carriage from their perilous station."

"When it becomes evident to the driver of an automobile that his machine is frightening the horses hitched to an approaching carriage, and that his further progress will increase the peril of the persons in the carriage, it is his duty to stop, or at least check up, irrespective of whether the occupants of the carriage are guilty of negligence." McIntyre v. Orner. 166 Ind. 57, 76 N. E. 750, 4 L. R. A. (N. S.) 1130, 117 Am. St. Rep. 359, 8 Am. & Eng. Ann. Cas. 1087.

The case of Seman v. Mott, 127 App. Div. 18, 110 N. Y. Supp. 1040, cited by defendant's learned counsel, is not analogous. In that case the plaintiff, a pedestrian, walked into the side of the car, which, because of the pedestrians upon the street, was barely moving. Said the court:

"He was not bound to bring his car to a standstill. He had a right to go on. There is no proof and no inference possible that * * * he had reason to believe that, if he proceeded, the plaintiff would continue so as to come into contact with the wheel or side of the car."

How totally inapplicable this reasoning is to our case needs no pointing out.

We do not agree with defendant that the allegations of the petition were not sufficiently specific in setting forth what particular acts and conduct on his part was complained of as constituting negligence or fault. The petition, after having set forth the facts as stated in this opinion, went on to allege, among other things, that defendant—

"was driving or running said automobile in a careless and reckless manner, and that he failed and neglected to stop said automobile."

This, we think, was sufficiently specific.

Passing to the question of damages, we find it difficult to do justice between the parties. The old lady was knocked down.

run over, and dragged, had her thigh bone fractured in two places, suffered excruciatingly for months, and will now hobble with a stick, instead of walk, for the rest of her life, and was put to large expenses. At the same time, is defendant's mere imprudence to be punished to the point of ruin? The jury allowed $3,250, and the trial judge approved the verdict.

Judgment affirmed.