WEINFIELD v. YELLOW CAB CO., INC.

(February 11, 1929. Opinion and Decree.)
(March 4, 1929. Rehearing Refused.)
(April 22, 1929. Writ of Certiorari and Review Refused by Supreme Court.)

A. D. Danziger and P. H. Stern, of New Orleans, attorneys for plaintiff, appellee.

John P. Sullivan and David Sessler, of New Orleans, attorneys for defendant, appellant.

JONES, J. This is a suit for $5,239.50, damages for personal injuries alleged to have been caused to plaintiff by the negligent driving of defendant's chauffeur on the night of January 14, 1926, at 7:45, at the intersection of St. Mary and Prytania Streets, in this city. The defense is contributory negligence.

Before trial, plaintiff died and his widow and heirs have been made parties plaintiff. From a judgment based on the jury's verdict for $2,739.00 defendant has appealed.

Although there is some dispute as to the exact spot in the intersection at which plaintiff crossed, as to the exact direction in which plaintiff was going when struck, and as to his speed at the time, and also as to the speed of the cab, the main facts may be briefly stated as follows:

On the night of the accident plaintiff, who was about 55 years old, but active and in good physical condition, was walking on St. Mary Street towards St. Charles, from the river, and the streets in this vicinity were greatly crowded and congested with automobiles, as a miniature carnival parade, given for the benefit of the Fruit Growers Convention, was passing at the time on St. Charles Avenue one block away. The two streets there cross at right angles, Prytania being thirty-nine feet, six inches (39' 6") wide and St. Mary, twenty-six feet, six inches (26' 6") wide. The adjacent sidewalks on each street are twelve and one-half (12½') feet in width and there are buildings on all four corners. On Prytania Street there are two street car tracks. The one on the river side is known as the downtown track and the other as the uptown track. The distance between the two tracks is four feet five and one-half inches (4' 5½").

As the downtown car track was filled with standing automobiles, which were only able to move a few feet at a time on account of the congestion of traffic, plaintiff, when he reached Prytania Street, had to cross between two autos in the intersection of St. Mary Street, nearer the center of the street than the uptown sidewalk, on which he alleges he had been walking as he came up. After crossing hurriedly between two cars, about two or three feet apart, plaintiff looked downtown to see if anything was approaching on the uptown track and, seeing nothing, started to cross that track in a slightly diagonal direction, and when he was almost over the outside rail, was struck by the left fender of the taxicab, which had been coming down Prytania Street, straddling the street car rail next St. Charles Street. The taxi driver (who had been driving a yellow cab at the time for about a year,

and had had no accidents up to the trial), along with all of the other automobiles, had been coming down Prytania Street in the regular line of traffic, as required by the city ordinance, and about three-fourths of a block away from St. Mary Street, after seeing that nothing was ahead of him on the uptown track, turned to the left and came down towards St. Mary at a fast speed, until he was within a few feet of plaintiff.

Though he had no speedometer, the chauffeur says that he was going at the rate of fifteen or eighteen miles per hour when he approached St. Mary Street and that he did not see plaintiff until he was right on him, coming from between two stationary automobiles, about five or six feet below the uptown crossing in a diagonal direction toward his cab; he then blew his horn, jammed on his foot-brakes and veered as much as possible to the right to avoid the accident, but plaintiff, when he heard the horn and saw the oncoming cab, hopped twice towards St. Charles Avenue, right in the front of his car.

At the time of the accident, Mr. and Mrs. Charles W. King, of Cincinnati, who were temporarily in the city, were passengers in the taxicab, and the testimony of King was taken under special orders of the court on January 26th, a few days after the accident. King, who impresses us as a frank and fair witness and certainly must have recalled the accident vividly, testifies as follows:

He was seated on the right hand side of the cab and therefore had a good view of the accident; the chauffeur had been coming down Prytania Street, at a speed of at least twenty-five miles per hour, until he almost reached the uptown crossing of St. Mary Street, when Weinfield came out of the line of traffic about fifteen or twenty feet in front of the cab, and chauffeur applied his brakes and started to sound the horn; plaintiff then looked around and, when he saw the car coming down on him, made two hops towards St. Charles Avenue and was struck by the left fender of the car; he had felt uneasy when the chauffeur turned out of the downtown traffic line, because he felt it was a dangerous procedure, as traffic might come out St. Mary Street and turn up Prytania, and there would be no way to escape; when the cab struck plaintiff he was knocked forward about ten feet.

On cross-examination he says that the accident occurred on the uptown side of St. Mary Street. He thought chauffeur was driving a little too fast when he approached the intersection at a speed of at least twenty-five miles per hour with all the congestion then existing.

The statements of King as to speed are confirmed in a measure by Varnado, who was driving the car in front of which plaintiff passed when he crossed over the downtown car track. This witness says that he did not see the accident, but he heard the brakes grinding immediately after plaintiff passed in front of him, and when he turned his head he saw the form of a person "hurtled through the air."

Defendant, both in his oral argument and his able brief, contends most strenuously that the judgment of the lower court should be reversed because plaintiff was guilty of contributory negligence in trying to cross in front of the cab when he might have saved himself by stepping back two or three feet. In support of his argument he has quoted many decisions and authorities, which undoubtedly are good law, but we do not think applicable here. If we accept the statement of defendant's chauffeur, his only witness, that plaintiff ran

through the downtown traffic diagonally right into his cab, and that he did not see him until he was right on him, not more than four or five feet away, we hardly think that plaintiff could have stopped in time to avoid the accident and step back.

On this point we think the evidence of King is more probable and more consistent with the facts when he says plaintiff was coming at a rate of twenty-five miles per hour until he was within fifteen or twenty feet of plaintiff, when he suddenly began to blow his horn, slam on his brakes and veer his car to the right. Under such circumstances a pedestrian can hardly be considered guilty of contributory negligence, although the course he selects results in injury which he might have escaped had he acted otherwise. This principle has been repeatedly upheld by both this court and the Supreme Court.

In Isaac D. Stone vs. N. O. Public Service Inc., No. 10,460, Court of Appeal 119 So. 757 (not yet [officially] reported), 45 C. J. 962, the Court said:

"Conduct which might otherwise constitute negligence may not be so considered where the acts and omissions of the person injured occurred in the presence or under a reasonably well founded apprehension of impending danger, or in an emergency which is calculated to produce fright, excitement or bewilderment and affect the judgment.

"The rule is well established that, when one is required to act suddenly and in the face of imminent danger, he is not required to act as if he had time for deliberation and the full exercise of his judgment and reasoning faculties." (Navailles vs. Deilmann, 124 La. 421, 50 So. 449; 134 American State Reports 508). 45 Corpus Juris, pages 963 et seq., also

"Ordinary care to avoid injury is all that is required.

"The test is did he act as a reasonably

prudent man would have acted under the same or similar circumstances.

"He will not be held guilty of contributory negligence merely because he failed to exercise the care a prudent person would have exercised under ordinary circumstances.

"When a person exercises the care and caution in an emergency which an ordinary prudent person would have exercised under the same or similar circumstances, he is not negligent merely because he fails to exercise the best judgment * * *; or in attempting to escape the danger under such circumstances put himself in a more dangerous position.

"So also where by the negligence·of another, one is compelled to choose instantly between two hazards he will not be guilty of contributory negligence, although the one he selects results in injury and he might have escaped had he chosen the other, or had he done nothing at all." 45 Cyc. 963 et al.

This principle of law has been followed by decisions of this Court. In the case of Johnson vs. Boyle, 5 La. App. page 362, the decision of Navailles vs. Deilmann, 124 La. 421, 50 So. 449, 134 Am. St. Rep. 508, cited supra, is quoted with approval.

The opinion also quotes with approval the·case of Thiess vs. Thomas, 77 N. Y. Supp. 276, holding in part:

"If an automobile comes upon a boy under circumstances calculated to produce fright or terror, and such fright causes an error in judgment, by which he runs in front of an automobile, he is not guilty of contributory negligence."

The driver was guilty of negligence in leaving the slow-moving line of traffic and driving down the wrong side of the street at the speed of twenty-five miles an hour, in violation of the traffic ordinance, when all the streets in that neighborhood were congested with traffic on account of the proximity of a carnival parade, and we think· that this negligence was the proximate cause of the accident.

In the case of LeBlanc vs. Checker Cab Co., 8 La. App. 472, where the plaintiff was injured by one of the cabs of defendant company in returning from a carnival parade, also down on Prytania Street, this court used the following language:

"A taxicab driver should regulate the speed of his cab to conform to traffic conditions. On a carnival night when the streets are crowded with automobiles and pedestrians, unusual care must be observed by the driver of a taxicab, and his cab should be at all times under control and its speed such as to permit a complete stop at a short distance."

On this point see, also, the following authorities:

Gonzales vs. Allen, 7 La. App. 550.
Green vs. Hamilton, 3 La. App. 120.
Gouzien vs. Feraci, 2 La. App. 115.
Tolliver vs. Checker Cab Co., 3 La. App. 278.
Dill vs. Colley, 3 La. App. 305.
Roy and Wife vs. Israel, 3 La. App. 311.
Wall vs. Donahue, 8 La. App. 335.
Navailles vs. Deilmann, 124 La. 421, 50 So. 449, 134 Am. St. Rep. 508.
Shields vs. Fairchild, 130 La. 648, 58 So. 497.
Kelly vs. Schmidt et al., 142 La. 91, 76 So. 250.
Southall vs. Smith, 151 La. Ann. 967, 92 So. 402, 27 A. L. R. 1194.

Dr. Magruder, plaintiff's physician, testified humerus in plaintiff's right arm was broken just at the point of the shoulder; that he had brush burns on his face, nose and chin, and that two of his front teeth were broken, and there were bruises on one of his arms, on one of his legs and on both hands; that he was in bed about a week and that his arm was immobilized for over a month, and that he continued to suffer some pain for some time thereafter. As the doctor, druggist and dentist bills were proved to amount to $239.00, the amount allowed for actual pain and suffering and consequent discomfort was $2,500.00.

We think that the amount allowed does substantial justice and for this reason the judgment is affirmed.