## No. 600

### First Circuit

---

### POPE v. LOCASCIO, SR., ET AL.

---

(March 5, 1930. Opinion and Decree.)
(April 14, 1930. Rehearing Refused.)
(June 2, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

---

Rownd & Warner, of Hammond, attorneys for plaintiff, appellee.

P. M. Milner, of New Orleans, attorney for defendants, appellants.

MOUTON, J. Railroad avenue runs north and south through Hammond, a town in the parish of Tangipahoa, west of and paralleling the tracks of the Illinois Central Railroad Company. Robert street runs east and west through Hammond across the railroad tracks, and intersects the avenue about 50 or 75 feet south of the railroad depot which is situated near the railroad line, and north of Robert street. A building known under the primitive name of Log Cabin is located at the corner on the south side of Robert street where it enters into Railroad avenue.

In May, 1927, a collision occurred at the intersection of Robert street and Railroad avenue between a Nash sedan, Mrs. L. H. Pope, wife of plaintiff, was driving, and a Ford truck which John Locascio, defendant, was driving. The accident occurred about 9 or 10 in the morning, and there is nothing to indicate that anything existed in the weather conditions that could have affected the vision of either Mrs. Pope or John Locascio.

Mrs. Pope was taking her little girls to school, and entered the avenue from Robert street, driving eastward towards the railroad tracks. She says she was driving slowly when she started to cross the avenue, as she expected to stop at the tracks; that when she approached the avenue she looked to the right from which direction there was nothing in "sight," as she expresses it, and then looked to the left and saw a train standing in front of the depot. She was, at that time, in Railroad avenue, and says she glanced to her right, saw the truck defendant was driving dashing

towards her; that she stepped on the gas a little, expecting defendant to slow up and pass behind her car. Instead of slowing up as she expected, she testifies that defendant ran into the side of her car, crushing the running board, bending the rear fender, and imprinting the radiator in the door of the sedan. She testifies that, as defendant approached her, she saw his head was turned, but that she did not suppose he would keep his head in that position. The defendant, the record shows, was coming from the south on Railroad avenue, was driving towards Robert street where it crosses the avenue.

Sugar Gorman was, he says, sitting on the steps of the Log Cabin which faces east across the avenue, on the east side of which defendant was driving. Evidently Gorman was in a position where he could see defendant in his truck, and also the sedan Mrs. Pope was driving through Robert street across the avenue. He says when Mrs. Pope had just about crossed the avenue defendant waved his hand to a Mr. Berry who was standing near him, then turned his head in front, but was at that time too close, to stop, meaning too near the sedan. He did not, however, say how many feet or the exact proximity the truck was from the sedan when defendant turned his head after waving his hand in the direction of Mr. Berry. This statement corroborates the testimony of Mrs. Pope where she says defendant had his head turned immediately before the collision occurred.

It is shown that defendant was driving on the east side of the avenue, his right side, when the truck and auto collided. It is also shown that Mrs. Pope had negotiated about two-thirds of the avenue when the accident happened at the intersection of the street and avenue. It is clearly shown that Mrs. Pope entered the intersection before defendant reached there with his truck.

Defendant, on cross-examination by plaintiff, ascribed the accident to the fact that Mrs. Pope suddenly stopped her car in front of his truck. In testifying in his own defense he reiterates this statement, and again insists it was because of this sudden unexpected stopping of her car that the collision occurred. In attributing the accident to that cause, and in order to sustain his contention or theory, he says, if she had stopped before reaching me, had continued across or had turned to her left, the collision would never have occurred.

Mrs. Pope, on the other hand, is positive that she never stopped in front of his car, that she never thought of so stopping. To the contrary, she testifies that, when she suddenly apprehended that defendant was dashing towards her she stepped on the gas to increase her speed with the idea that he would pass behind her.

Gorman says she did not stop her car before the accident, that she "kept a going."

Tony Calamia, witness for defendant, says he witnessed the accident. He testifies that there were marks left on the asphalt back of Mrs. Pope's car indicating that her rear wheels had been sliding or skidding, which he ascribed to the use of the brakes. Judging from the imprints of these wheels, he said that the car had stopped. This is contradicted by Mrs. Pope, also by Gorman, who says she kept on her way.

L. H. Pope testifies the only marks behind the Nash car indicated they had been caused by the car being pushed around, and in this respect he is corroborated by

Hatzwell, a witness for plaintiff, but disinterested so far as disclosed by the record. Although Calamia first said that the marks behind the sedan showed that it had stopped, strange to say, in answer to a question from the court, he said when struck it was moving. Evidently under such testimony on this vital issue the court accepted as true the statement of Mrs. Pope on this subject. The conclusion of the court is sustained by the preponderance of the proof.

The solution of that question depended on the faith to be given to the testimony of these witnesses, a matter resting primarily within the province of the trial judge. Appellate courts will not reverse when the issue presented is one of fact, unless there be manifest error in the finding below, but we can discover no such error. On the contrary, we approve the finding as it is fully justified by the evidence. Besides, it is unreasonable to believe that Mrs. Pope would have suddenly stopped her car in the path of the advancing truck. Such an act would have been suicidal. It is hardly believable. As it appears, that Mrs. Pope had not stopped in front of the truck, as claimed by defendant, he could, from his own account of the occurrence, have passed in the rear of the sedan, and the collision would never have happened.

When automobiles are approaching an intersection of streets at right angles, the case here, the rule is that the one entering it first has the right of way, and the other should respect that right, and failure to do so is negligence, Middleton vs. Jordan, 10 La. App. 189, 120 So. 668; even when the other auto has the right of way, the one entering the intersection first is entitled to proceed. Marshall vs. Freeman, 10 La. App. 12, 120 So. 414.

The defendant claims that he applied his brakes, skidded over the asphalt, but that it was too late to avoid the collision with the sedan which had suddenly stopped in front of his truck. The injuries to the sedan show that it received a violent blow, indicating that the truck must have been in rather close proximity to it when the brakes were applied. The fact that defendant had turned his head to the left when he waved his hand towards Mr. Berry as the truck neared the intersection also shows that defendant was but a very short distance from Mrs. Pope when he realized the impending danger and brought his brakes into requisition. This dangerous situation was the result of his total disregard of his duty under the circumstances which required him to have had his truck under control so as to allow Mrs. Pope who had first entered the intersection, to proceed across the avenue, a right to which she was clearly entitled. Defendant was therefore at fault.

Mrs. Pope was questioned at length as to whether she could not have avoided the collision after she saw the truck dashing towards her, by either stopping or suddenly turning to her left side. She explained that she stepped on the gas to let defendant pass in her rear, and that there was no stopping possible, and that turning to her left would not have avoided a collision because defendant would have run into her from the rear; that she did the best she could under the circumstances by stepping on the gas to allow defendant the opportunity of passing behind and avoiding the accident. It is possible that Mrs. Pope did not follow the best course in attempting to extricate herself from the perilous position in which she had been placed by the negligence and fault of the defendant. There was an emergency created there, and Mrs. Pope was acting under a reasonably

well-founded apprehension of impending danger. In such a situation a person is not expected to exercise his full judgment and reasoning faculties. If he exercised the care and caution in an emergency which an ordinarily prudent person would have exercised under similar circumstances, he is not negligent because he fails to exercise the best judgment. Navailles vs. Dielmann, 124 La. 421, 50 So. 449, 134 Am. St. Rep. 508; Weinfield vs. Yellow Cab Co., 10 La. App. 316, 120 So. 420.

We are of the opinion that Mrs. Pope exercised the care and caution which an ordinarily prudent person would have exercised under similar circumstances, and that is all that was required of her. Furthermore, when two hazards are created by the negligence of another, and one is compelled to choose instantly between the two hazards, he will not be guilty of contributory negligence, although the one he selects results in injury.

In this case the hazards were created by the negligence of defendant, and, even if Mrs. Pope made a mistake in choosing between the hazards presented, she cannot be charged with contributory negligence. We believe that she followed the wisest course that could have been adopted in the sudden perilous situation in which she unexpectedly found herself, and that she was not in any way guilty of contributory negligence.

In the accident, Patsy, the daughter of Mrs. Pope and of plaintiff, aged about 14, received painful and severe injuries which required a delicate operation.

Two judgments were rendered against defendant, one for $1,500 for personal injuries to the child, and the other for $710.40 for damages to plaintiff's auto, medical expenses, and attention to plaintiff's daughter. The amounts allowed are supported by the proof and are not excessive.

Counsel for defendant contends that the doctrine which holds that the contributory negligence of the driver of an auto cannot be imputed to his guest is not applicable here because the child, when the collision occurred, was in the company and the actual care of her mother, under her protection, and was not a guest; that under such circumstances the contributory negligence of the mother is that of the child.

The question is extremely interesting, ably presented in a well-prepared brief replete with many citations from various courts, but we are relieved of the necessity of passing on the subject mentioned, as we find, for the reasons above stated, that the mother of the child was not chargeable with contributory negligence.

The two judgments in favor of plaintiff for the amounts above stated are hereby affirmed.

LECHE, J., not participating.

_____

PER CURIAM.

For the reasons assigned in the case of plaintiff herein against same defendant, 126 So. 727, it is ordered, adjudged, and decreed that the judgment rendered below in this case be, and is hereby, affirmed, with costs.