No. 700

First Circuit

STAFFORD v. NELSON BROS.

(October 8, 1930. Opinion and Decree.)
(December 1st, 1930. Rehearing Refused.)
(January 5, 1931. Writs of Certiorari and
Review Refused by Supreme Court.)

Amos L. Ponder, of Amite, attorney for plaintiff, appellee.

B. B. Purser, of Amite, and Eraste Vidrine, of New Orleans, attorneys for defendant, appellant.

MOUTON, J. The defendants contracted with the highway department to pave a highway 18 feet wide from about one mile south of Amite to Independence in Tangipahoa parish. After they finished laying the pavement they used an excavating machine to build the shoulders of the roadway. The machine was left on October 24, 1929, on the pavement, west side, taking nearly one-half of the paved part of the road. This machine weighed about 30,000 pounds and was nine feet wide.

While driving a Dodge automobile on this highway, plaintiff, on October 24, 1929, ran his car into the machine, totally wrecking the car. Plaintiff suffered severe personal injuries for which he is asking damages in this suit.

Mrs. Myra Hyde, widow of Fletcher Hyde, a guest in his car, who was riding on the front seat of the auto, is also demanding damages against defendants for injuries received by her.

The cases were consolidated for trial, and resulted in a judgment in favor of Stafford for $2,480, and for Mrs. Myra Hyde in the sum of $2,000.

Defendants appeal.

In a supplemental petition plaintiffs, alleging that defendants were residents of the state of Tennessee, obtained the attachment of property belonging to them situated in Tangipahoa. They excepted to the jurisdiction of the court for want of legal citation. Having, however, appeared to "dissolve the attachment and having obtained the release of the property under bond, exception to the legality of citation and want of jurisdiction must be considered as being waived. Colligan v. Benoit, 13 La. App. 612, 128 So. 688, June 9, 1930; Ribundo v. Kemp, 12 La. App. 512, 126 So. 577.

## MERITS

In the answer it is set up that when the plaintiffs were injured they knew that the highway was in process of construction. This allegation implies, we presume, that plaintiffs subjected themselves to the risks which they could expect to meet on a road which had not as yet been opened

to the public for travel. There is no merit in that defense as the record shows that the highway, prior to the accident, had been generally used by the public, and had been opened for traffic. It is also contended that the defendants had stuck signs or written notices along that highway warning travelers that they used it subject to all risks.

The testimony in the case is rather conflicting on the issue as to whether such notices were on that roadway at the time of the accident, and leaves this question much in doubt. Even if such notices were there, as contended for by defendants, they might, particularly at night, have been easily overlooked by travelers and could not serve as a legal excuse to defendants who by opening the highway had permitted its untrammelled use. The proof shows that immediately after this unfortunate accident the highway, under the instructions of defendants, was immediately blocked and thus closed to the traveling public. This action on their part indicates that they then saw the necessity of closing the highway, a situation which they should have realized before. It is likewise contended by defendants that there were lighted lanterns attached to the machine when the collision with Stafford's auto occurred. On this question five witnesses, including plaintiff, Stafford, swore that there were no lights on that machine. Four of these witnesses were entirely disinterested in the outcome of this case. On the other hand, about an equal number of employees of defendants testified that the lights were there at the time. There was, therefore, a sharp conflict in the testimony of these witnesses on this issue of fact. Credence was given by the trial judge to the witnesses for plaintiff, and on a question of this charac-

ter where the evidence is about equally balanced, it is well settled in a long line of decisions, unnecessary to cite, that the finding below will not be disturbed by the appellate court.

In the solution of this case it must therefore be accepted as an established fact that there were no lights on that machine when the damage happened.

Section 5, Act 232, 1926, p. 388, requires any truck, bus or passenger automobile standing on a roadside or street to have a tail light or a parking light mounted on the rear left fender.

As the excavating machine, the one in question, was ten feet high, weighed 30,-000 pounds and covered nearly one-half the pavement, we are of the opinion that it should have had conspicuous lights at night for the protection of travelers over that roadway. We hold that it was inexcusable negligence for defendants to have allowed this machine to stand on and cover about half of the pavement of that highway without lights. As it clearly appears that defendants were in that respect at fault or negligent, the sole question remaining for decision is as to whether or not plaintiff, Stafford, who was driving his car, contributed to the accident, by not seeing the machine, or that he should have seen it in time to avoid the collision, but ran into it through his own fault or for failure to exercise ordinary care under the circumstances.

The record shows that Stafford was going southward towards Independence and was therefore entitled to the west side of the paved portion of the highway, nearly half of which was occupied on that side by the machine. It is shown that Stafford was traveling on his right-hand side

of the road when he came up to the machine. He was then going at 35 or 40 miles an hour. He could have been going at 45 miles and would still have been within the statutory limit of speed. There was another car driven by Mr. Delhonde which was going northward, that is, in the opposite direction.

The defendants say Stafford could and should have seen that machine in time to avoid the collision and that it was by his negligence that he ran into it.

Mr. Delhonde, witness for plaintiff, says he saw the machine a while before the accident when he was then on his way to Independence; that about an hour after on his way back to Amite, referring to himself and Mrs. Delhonde, who was driving his car, he says, "We were watching for the machine, as we knew it had no lights."

Mr. Warner, another witness for plaintiff, says he was driving between 30 and 35 miles over this highway and saw the crane of the machine only when he was about 40 feet from it. It was about 7 o'clock when Mr. Warner passed the machine, while Stafford went up against it half an hour later when it is very probable thicker darkness had settled over the highway.

It would be unreasonable, under the circumstances then existing there, to say that Stafford could or should have seen the machine sooner than he did.

The record shows that Mr. Delhonde was coming towards the machine traveling northward, and that Stafford, who was going southward, saw the Delhonde car when it was at a distance of about 60 or 70 yards.

Stafford says he figured "on passing that car." He was then asked, "What did you do when you noticed you could not see?" He answered, "I slowed down." Then corrects himself by saying, "I started to slow down." He testifies, in referring to the machine, that when he started to slow down he was "right at it," not "over forty feet." He says he tried to go around the machine but did not know on which side of the road it was; that he swung to the right and then "whipped" to the left to avoid the collision, but in vain. When he struck the machine he was going, he says, 30 miles an hour, which shows that he had reduced his speed five or ten miles an hour, as he had testified he was going before at 35 or 40 miles an hour. He was asked "in what space" he could stop a car running at 35 or 40 miles an hour. His answer was, "If I have got a certain space to stop I can stop within a distance of fifty feet, but if something shows up ahead of me I don't know." There is no evidence to contradict that statement or to show that an auto traveling at that rate of speed could be stopped in a shorter distance. It does not appear that when he saw the machine, which was not over 40 feet away and when he was then blinded by the lights of the Delhonde car, that he applied his emergency brake. It must not be said, however, that he was at fault or negligent for not doing so, as it appears from his evidence, and which is not contradicted, that he could not have stopped within a distance of less than 50 feet, even if he had had that much of a designated space within which to stop his car. Naturally, when surprised by an object suddenly appearing before him, as he explains, he could not say that he could bring a car to a stop even within a space of 50 feet. Hence, we must hold that if he had applied his emergency brake when he was first blinded by the lights of the Delhonde car when he was then 40 feet

away from the machine a collision would have been inevitable because he could not have stopped in time to avoid striking it.

Let us say, however, that Stafford, on seeing the machine, instead of going around it, should have applied his brakes to stop his car. Accepting this view of the case, he would not, however, be responsible in damages, because the defendants by permitting the machine to remain on the highway without lights had by their own fault created an emergency there, and from which it follows that defendants had created two hazards with which Stafford was suddenly confronted. In being placed in such a perilous position, he had to take the risks of applying his brake or of attempting to go around the machine so as to avoid striking it. We are of the opinion that he actually exercised the ordinary care which any prudent person would have taken confronted, as he was, with imminent danger to his life or bodily harm. Even if he did not exercise the best judgment—considering the situation in which he had been placed by the inexcusable negligence of the defendants—he cannot be held liable for the results of the collision. Navailles v. Dulmann, 124 La. 421, 50 So. 449, 134 Am. St. Rep. 508, citing McFern v. Gardner, 121 Mo. App. 1, 13, 97 S. W. 972, 975; Weinfield v. Yellow Cab Co., 10 La. App. 316, 120 So. 420; Lorence H. Pope v. Sam Locascio, 13 La. App. 304, 126 So. 727.

## AMOUNT OF DAMAGES

Dewey Stafford and Mrs. Hyde were both severely injured. They suffered considerable pains as a result of their personal injuries, which it seems, may be followed with permanent effects. It is unnecessary for us to go into the particulars in reference to the cuts, bruises, breaking or fracturing of bones which resulted from the collision.

Dewey Stafford sued for $2,995, and was given judgment for $2,480, and Mrs. Hyde was allowed $2,000 on a claim also for $2,995, which counsel for plaintiffs explain were brought for these respective amounts to avoid the delays of a trial in the Federal courts had larger claims been sued for, the defendants being non-residents.

After a careful reading of the evidence referring to the nature of the injuries suffered by plaintiffs, as described by them and by their physicians, we find that the court has given to plaintiffs a fair and just allowance for the damages claimed.

In this case the judgment is therefore affirmed with costs. A proper decree will be entered affirming the judgment rendered in favor of Mrs. Myra Hyde in her suit against defendants for the reasons assigned herein.