No. 745

First Circuit

———

HANNO v. MOTOR FREIGHT LINES, INC.

———

(May 5, 1931. Opinion and Decree.)
(June 16, 1931. Rehearing Refused.)
(July 17, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

———

M. C. Rownd, of Springville, attorney for plaintiff, appellee.

Milner & Porteous, of New Orleans, attorneys for defendant, appellant.

LeBLANC, J. Plaintiff sues the defendant for damages in the sum of $1,574.50, of which amount $550 is for injuries to his hand, arm, and leg, and for pain and suffering, and the balance for damages to his automobile, loss of its use, and loss of time in his business.

In his petition, he recites an accident which occurred through the fault and negligence of the defendant in having left in the roadway one of its large motor-trucks, at night, without any lights either in front or in the rear.

He alleges that he was driving east on the Baton Rouge-Hammond highway on the night of September 10, 1929, and was about 200 yards east of the town of Holden in the parish of Livingston; that there was another automobile approaching him from the opposite direction, whose driver failed to dim his lights; that he pulled over to the right to give the on-coming car the proper amount of road for them to meet, and, in doing so, he ran into this parked truck of the defendant which had no signal light or warning whatsoever of its presence on the road.

The defendant filed an exception of no right or cause of action, based, as we understand it, on the failure of the plaintiff to have alleged that he was blinded by the glare of the headlights of the approaching car. Counsel for defendant argues that, if the on-coming car did not have blinding headlights, it was not necessary for the driver to dim them, and if, on the other hand, the allegation made is meant to convey the idea that the headlights were blinding, then it was the duty of plaintiff, under the law, to have his car under such control as to bring it to a complete stop within the distance his headlights illuminated the road in front of him.

We are of the opinion that the question raised under the exception is properly a matter of defense, and, as the petition shows a cause of action, the ruling of the lower court on the exception was correct.

In its answer, the defendant denies practically all the allegations of plaintiff's petition, and charges him with contributory negligence in nine specific instances, all of which summed up, however, amount to the very one presented under the exception of no right or cause of action.

The district judge, without assigning any written reasons, rendered judgment in favor of the plaintiff in the sum of $619.-50, from which the defendant has appealed.

The evidence, we think, shows a clear case of negligence on the part of the driver in charge in having left this large truck, with a trailer behind it, loaded with nearly five tons of freight, on the public highway, at night, without any lights, unguarded, and with no sign whatever of it being there except its own form. The question of negligence in such cases was pre-sented before this court in two recent cases, and the act in each instance was severely condemned. In Futch v. Addison, 12 La. App. 535, 126 So. 590, 591, it was said:

"Leaving on the highway, unguarded and without lights, such a dangerous menace to everybody using the road after dark, was in violation of Act No. 296 of 1928, sec. 39. It was also such an act of inexcusable negligence that defendant's liability on account of having left it there is too plain for argument."

In Stafford v. Nelson Bros., 15 La. App. 51, 130 So. 234, the defendants were held "inexcusably negligent" for having allowed a large excavating machine to stand on, and cover almost one-half of, the highway, at night, without lights.

From the record in the case before us, we learn that the defendant's truck was on its way from Baton Rouge to New Orleans. When it reached this point, about 200 yards east of the town of Holden, something happened to the left rear double wheel, and it fell off. As it was getting late, the driver and the only other occupant of the truck with him decided to jack it up and lay over for the night. It was then getting dark. The driver says that he pulled the truck as far over to the right as he could; that he and his fellow-passenger then turned on the lights, lit a lantern, which was hung on to the rear end of the trailer, and they then went to Holden to telephone to one of the officials of his company to tell him what had happened. When they returned to the truck, it was raining, so they both got under a tarpaulin in the trailer and went to sleep. The testimony shows that it was about 9:30 or 9:45 when the plaintiff's car ran into them.

There is conflict in the testimony as to

the exact location of the truck in relation to the center of the road, which it is shown is 27 feet wide at this point. The driver of the truck says that it was 18 or 20 inches from the edge of the road, and plaintiff insists that the right wheels were 9 feet from the edge. If the plaintiff is right, then the truck had to be almost in the middle of the road. We do not attach as much importance, however, to the precise location of the truck as we do to the question as to whether or not it had lights on it to give warning of its presence.

On this point, we find the driver, a young man named Bourgeois, and his companion, named Wicker, both swearing that the lights were on. Bourgeois says quite a lot about a lantern light at the tail end of the trailer. It is rather singular that Wicker, whose testimony was taken by deposition, does not say a word about any lantern. Strange also that the lantern, which was supposed to be attached to the left end of the trailer, 18 inches from the point of contact in the collision, should, according to Bourgeois, have disappeared completely that night. He speaks of seeing broken glass, but could not find the lantern. To substantiate his story about it, a witness by the name of Beary, an official of the defendant company, testifies that on the morning following the accident, when he appeared at the scene, he looked for the lantern, and found it across a ditch about 40 or 50 feet from the place where the truck was hit by plaintiff's car. The inference, we presume, is that someone threw it there, hoping that it would not be discovered. There is absolutely nothing to support Beary's testimony. Four witnesses, all disinterested, passed by that truck that night, after dark, and not one of them saw any lights on it. Some of them took the trouble to look back to see particularly if there were any tail-lights burning, and saw none. On this point, we have come to the conclusion that the preponderance of the evidence is strongly in favor of the plaintiff, who has shown that there were no lights nor warning or signal of any kind of the truck's presence on this public highway. Aside from this being a violation of one of the provisions of the state highway law, Act No. 296 of 1928, it has been consistently held to constitute gross negligence on the part of the owner of such vehicle.

The negligence of defendant having been shown, it remains now for us to decide whether there was any contributory negligence on the part of plaintiff which would bar his recovery.

Counsel for defendant relies principally on that rule which he takes from certain cases, a good many of them being from other states, to the effect that it is the duty of the driver of an automobile at night to keep his car under such control so that, in case he meets another car and is blinded by its lights, he can bring his car to a complete stop within the distance on the road illuminated by his own lights. We find that to be a correct statement of what the rule is in the cases cited, but we are of the opinion that its application depends entirely on the facts and circumstances arising in each case. In the latest case referred to by counsel, Woodley & Collins v. Schusters' Wholesale Produce Co., Inc., 170 La. 527, 128 So. 469, 470, the Supreme Court of this state holds that it is not an inflexible rule. We quote the following:

"Whether it should be deemed negligence for the driver of an automobile to fail to

slow down, in a case like this, depends so much upon the circumstances of the particular case that it is not easy nor safe to lay down a hard and fast rule on the subject."

It is rather difficult to say, we believe, at what precise moment the driver of an automobile becomes blinded by the glaring lights of an approaching car. Some people with good eyesight are never confused, and others less fortunate seldom or never drive at night because of their nervousness and anxiety in this respect. The plaintiff in this case says that the other car was on him before he knew that its lights were extremely bright. Up to this time, he seemed to have apprehended no trouble or difficulty in meeting it. He was not going more than 35 miles an hour, on a straight, level road 27 feet wide. His lights were in good working order, and he says he was looking ahead. Whilst a reasonable precaution might prompt a driver to travel slower at night than during the daytime, the law makes no difference as regards the regulation of speed. The only extra requirement of the law is that a person driving an automobile after dark must have his car equipped with front lights of some standard projection. That requirement is meant to insure, as far as possible, safe driving under the ordinary, normal conditions brought about by reason of darkness. It is not shown here that the plaintiff's car was not so equipped. There is nothing then to indicate any negligence on his part, unless it be his alleged failure to have brought his car to an instant stop when he became confused and blinded by the glaring headlights of the on-coming car.

It was at the moment immediately after the car had passed him, he says, that he found himself confronted with this situation of danger produced by the presence of this unguarded truck on the road. It was too late then to stop before running into it, and too late also to attempt to pass around it. Under the circumstances, was he negligent?

We are of the opinion that a person who is blinded by the lights of a car coming from an opposite direction is called on to exercise great caution and have his car under such control as to safely meet any ordinary emergency which may present itself on the road, because of the darkness, but we are not prepared to hold that he is expected to be able to stop his car, almost on the spur of the moment, when, as in this case, he finds himself confronted suddenly with a situation of extreme peril on the highway such as had been created by this defendant. The situation of emergency was not an ordinary one, as persons are not permitted to leave unguarded, and without lights, trucks or vehicles parked on the public highway after dark. There is another rule of law, equally as well recognized as the one contended for by counsel for defendant in this case, to the effect that the driver of an automobile, confronted with imminent danger to his life or bodily harm, will not be held liable for the results of a collision, even though he did not exercise the best judgment, considering the situation in which he had been placed by the inexcusable negligence of the defendant. This last rule was applied in Stafford v. Nelson Bros., 15 La. App. 51, 130 So. 234, a case where the facts were very much similar to those presented here.

Looking for what was the proximate cause of the accident, as we must in order to fix liability, we certainly believe that it was the absence of lights or of any

warning whatever of the presence of this large truck at night on the public highway. The state statute, No. 296 of 1928, sec. 57, required that the one in charge of that truck display on it "one or more lamps projecting a white light visible under normal atmospheric conditions from a distance of five hundred feet to the front," and also a red light "visible under like conditions from a distance of five hundred feet to the rear." This is not a rigid regulation, and it is a very precautionary one. Had it been complied with in this case, there is little reason to believe that this accident would have occurred.

As we find the negligence of the driver of defendant's truck to be the real and proximate cause of the collision, we are bound to hold his employer responsible in damages.

The amount awarded by the lower court is not questioned by either side. We have carefully examined the items of damage, and we believe that the amount allowed under the judgment is fair and does substantial justice.

ELLIOTT, J. (dissenting). I agree with the majority of the court that Motor Freight Lines, Inc., was negligent and at fault.

I dissent from the holding that the plaintiff, Hanno, was not also negligent, and that his negligence, acting with that of the defendant, did not bring about the collision. The road was 27 feet wide, straight and level, and Hanno could not have helped seeing defendant's truck, under the headlights of his own automobile, in time to have stopped before striking it if he had been driving at a moderate speed and looking ahead in the direction he was going.

Act No. 296 of 1928, sec. 5, provides that:

"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at such speed as to endanger the life, limb or property of any person."

Section 50 requires that every vehicle, after sunset and before sunrise, and at any other time when there is not sufficient light to render clearly discernible any person on the highway a distance of 200 feet ahead, shall be equipped with lighted front and rear lamps or reflectors.

Section 52:

"The head lamps of motor vehicles shall be so constructed, arranged and adjusted that * * *, they will at all times mentioned in Section 50 and under normal atmospheric conditions and on a level road produce a driving light sufficient to render clearly discernible a person two hundred feet ahead, but shall not project a glaring or dazzling light to persons in front of such head lamp."

Plaintiff was driving alone, going east in the same direction in which the truck was headed. He testified that his automobile had good headlights. It must be assumed from what he says that his headlights had the lighting power required by law. He saw the truck in the road ahead of him, and says:

"If I had had time to have done it, I could have gone around on the right-hand side of the road and passed the truck and trailer; they were almost in the center of the road, I call it, the truck was."

He says more than once that there was room for him to have passed on the left-

hand side of the truck; if he had had time, he would have tried it, etc. He was asked:

"Q. Tell us what happened?
"A. I was driving along, driving east. As I was going along I saw a car coming that had very bright lights and I moved over to the left hand side of the road and as this car got just on me, I couldn't see very well past it and there was right on this side, a large truck with no lights at all visible on it. I couldn't see it and there was nothing to do, but crash into it. I was on the truck before I realized it was there. I had but a short time to think also the truck was up rather high and the reason it tore up my car so bad is I just ran up underneath it."

He later says:

"Q. Do you know with reference to the highway, how this truck and trailer were parked there?
"A. Well they were parked. If I had time to have done it, I could have gone around on the right-hand side of the road and passed the truck and trailer. They were almost in the center of the road I call it, the truck was."

Further on:

"Q. You know about how fast you were operating your car?
"A. No sir. I wasn't watching the speedometer. I slowed up for the crossing at Holden,—I must have been going around 35 miles an hour when I ran into it."

The plaintiff was meeting a car showing bright lights going west. He saw it a half a mile ahead. It came on and was passing the truck just about the time he struck the trailer. He says on this subject:

"Q. This accident happened before this car ever passed you?
"A. No sir. It just passed me as I hit. As it got along by the side of me, that is when I noticed the truck. I was right on the truck as the car passed me.

"Q. In other words the car was right along side of you at the moment of the impact?
"A. No sir. As I noticed the truck the car was along side of me."

Plaintiff testifies that the on-coming car passed on the right side of the truck, and, as the on-coming car was going west, it passed on the north side. Asked if this parked truck was in between him and the approaching car, why he could not see the truck, he said:

"I must have been driving about the center of the road. I know I turned to the left as the glare got in my eyes. As the glare got in my eyes I turned to the left."

He was then asked, even if he was in the center of the road and looking ahead, why he could not see the parked truck, which was a very large one, and his answer was:

"All I know is, that the glare of the headlights of that car was in my eyes."

Pressed further, he said:
"I did see it, but too late."
"Q. Were you looking ahead?
"A. Yes sir.
"Q. Don't you know that if you look and do not see, that it is the same as not looking?
"A. I couldn't see anything, but the other car coming.
"Q. And the first time you saw this parked truck was just about the moment you hit?
"A. I was pretty close to it when I saw it."

Supposing plaintiff's headlights, sufficient to have shown him a person in the road a distance of 200 feet ahead, this bulky stationary object, situated near the center of a level road, 27 feet wide, in between plaintiff's lights and the lights of the on-coming car, should have been seen by him, if he was driving at a lawful speed and look-

ing ahead, in time to have stopped before getting to it and to have done whatever was necessary upon reaching it in order to have avoided striking it. The highway in question is one upon which automobiles are passing back and forth almost constantly.

Ordinary care requires a man driving on it at night to expect and be on the lookout ahead for automobiles, motortrucks, and other things which may have stopped in the way as the result of accident, or otherwise.

The law, Act No. 296 of 1928, secs. 5 and 52 et seq., has for its object to prevent just such accidents as the one which has given rise to this suit, and to bring about greater safety in the matter of driving on the highways.

To that end the requirement that a party drive at a prudent speed, not greater than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and of any other conditions then existing, is made a legal duty. It is a legal duty to have his automobile equipped with headlights of lighting power to enable him to see a person 200 feet ahead. And his speed must be such, section 5, that he can within this distance turn to one side, slow down, stop, or do whatever the exigency of the situation may require.

Since this enactment, it is useless for a party to say that he was blinded by glaring lights of an on-coming car when he saw the truck in the road, in between him and the on-coming car, in time to have stopped. The law regards a party as having seen what he could not help seeing. Kelly v. Schmidt & Zeigler, 142 La. 91, 76 So. 250.

The rule is that a motorist on a highway at night must keep his car under such control that he can stop and avoid an obstruction within the distance that his headlights illuminate the way. Parlongue v. Leon, 6 La. App. 18; Pollet v. Robinson Lumber Co., 10 La. App. 760, 123 So. 155; Newsom v. I. C. R. R., 11 La. App. 50, 122 So. 874; Lipscomb v. Standard Highway Co., 11 La. App. 509, 124 So. 156; Sexton v. Stiles, 15 La. App. 148, 130 So. 821; Jacobs v. Jacobs, 141 La. 273, 74 So. 992, L. R. A. 1917F, 253; Blackburn v. R. R. Co., 144 La. 520, 80 So. 708; Woodley & Collins v. Schusters' Wholesale Produce Co., 170 La. 527, 128 So. 469.

Some of the above decisions were rendered before, others since, the enactment mentioned. In Jacobs v. Jacobs, the court held that there are exceptional situations in which the rule does not apply.

In Futch v. Addison, 12 La. App. 535, 126 So. 590, cited in the present opinion, a truck drawing a trailer stopped on the highway late in the evening, the result of an accident. The trailer was loaded with two saw logs, one of them about 14, the other about 18, feet long. The rear end of one of them projected about 4, the other about 8, feet out beyond the rear of the trailer. The truck was a little to the south side of the middle of the highway, and 25 or 30 feet south of a small bridge which spanned the highway. The ground was built up about 1½ to 2 feet on each side of the approach to the bridge, elevating the bridge to that extent above the level of the highway. There were hand rails at each end of the bridge. The elevation of the bridge hand rails at the end of it, combined with the fact that the bridge was not as wide as the road, served to prevent a party driving south from see-

ing the ends of the logs behind the bridge projecting towards him.

The negligence of the truck driver consisted in going off and leaving it there after dark, without a watchman or lights on the truck or logs of any kind.

As Futch came up close to the bridge, going south, with his lights on, another automobile with bright lights came up, going north. The bridge being so narrow, the other fellow waited for Futch to pass first. The waiting car made it necessary for Futch to swerve to the right immediately upon passing the bridge. After crossing the bridge, the ends of the projecting logs were not discernible to him under the lights of the cars until after he was so close that he could not stop before striking them. The danger was one that defendant should have foreseen. The Act No. 296 of 1928 does not protect people who leave dangers in the road, so situated as to be concealed from view under the headlights of cars approaching them from one of the directions of the road.

Stafford v. Nelson Bros., 15 La. App. 51, 130 So. pages 234, 236, is also cited in the present opinion. Nelson Bros. had left a large bulky machine to remain during the night on that part of a highway recently paved and re-opened to public traffic without lights on it. The machine was being used for the purpose of constructing shoulders along side of the recently laid pavement. The machine occupied nearly half of the west side of the pavement.

The Revised Statutes, sec. 3379 (amendment Act 240 of 1914), prohibits the obstruction of public roads. The alleged negligence of the plaintiff, Stafford, in not seeing the machine and stopping before he struck it was a close question in the case. The machine was on the side of the road on which Stafford belonged to be driving. As Stafford proceeded south under the headlights of his car, another automobile was coming north, meeting him, both drawing near the machine which was in between them. Stafford saw the on-coming car when it was 60 or 70 yards distant from him, but whether he had seen the machine in the road ahead of him before then or not the opinion does not say. At any rate, he kept going, without stopping, expecting to pass the on-coming car, which was also about to pass the machine, but the headlights of the car blinded him. He then started to slow down when only about 40 feet from the machine in the road. Not knowing on which side of the road it was, he swung to the right and then to the left, but struck the machine before he could stop.

After considering the facts and circumstances concerning Stafford's approach, the court concluded that:

"Even if he did not exercise the best judgment considering the situation in which he had been placed by the inexcusable negligence of the defendants, he cannot be held liable for the results of the collision."

The opinion cites authorities holding that, where an emergency existed in which a plaintiff is not guilty of contributory negligence, he may recover, although he selected a course resulting in injury, when he might have escaped had he acted otherwise.

The opinion in the Stafford case refers to Act No. 232 of 1926, sec. 5. That act contained no provision like that contained in Act No. 296 of 1928, sec. 52.

In the present case, I think the judgment appealed from should be reversed, and the demand of the plaintiff rejected.

I therefore respectfully dissent.