GOODWIN v. THERIOT et al.
No. 1549.

Court of Appeal of Louisiana. First Circuit.
Jan. 28, 1936.

Pujo, Bell & Hardin, of Lake Charles, for appellants.

McCoy, King & Jones, of Lake Charles, and Gordon Boswell, of New Orleans, for appellants.

LE BLANC, Judge.

This is a suit for damages for personal injuries and for other damages arising out of an automobile accident which occurred on the Old Spanish Trail on the night of February 9, 1933, at a point about three miles east of the town of Sulphur in the parish of Calcasieu.

The demand made was for the sum of $35,000 against Gaston Theriot, owner of the truck which was involved in the accident, and Commercial Standard Insurance Company, which carried public liability insurance on the same. Judgment was prayed for against them both in solido.

The plaintiff, Edwin Goodwin, was employed by the Texas Iron Works Sales Corporation, a corporation domiciled and doing business in the city of Houston, Tex. The Travelers Insurance Company carried that corporation's workmen's compensation insurance, and, under the terms of its contract, paid to the plaintiff herein various sums aggregating $2,710.30.

Upon issue being joined between the plaintiff and the defendants, the Travelers Insurance Company intervened in the present suit, and, alleging that it held a subrogation from the plaintiff of all his rights of action against the defendants to recover any amount it may have been obliged to pay as the compensation insurer of his employer, asked for judgment against both defendants in the sum of $2,710.30, and prayed that it be decreed payment of that sum by preference and priority out of any judgment the plaintiff might recover against them.

After this intervention had been filed and before trial, the plaintiff and defendants compromised their suit; plaintiff accepting the sum of $1,500 in settlement of his claim. He then moved to dismiss his suit. This motion brought on further controversy on the part of the intervener, which it is unnecessary for us to consider, as by an agreement subsequently entered into the suit was re-established with the Travelers Insurance Company as plaintiff and Gaston Theriot and Commercial Standard Insurance Company as defendants.

The issue presented concerns the negligence of the driver of the defendant Theriot's truck in leaving it on the highway at night without lights or any other signal to give warning of its presence and also the contributory negligence of Edwin Goodwin, driver of the other car which ran into it.

The trial judge found that the truck driver was negligent and that Goodwin was not guilty of contributory negligence.

He accordingly rendered judgment in favor of the Travelers Insurance Company to the extent of its demand, and both defendants have appealed.

The facts disclose one of the present day frequent accidents of an automobile running into an unguarded truck obstructing part of the paved highway at night. There seems to be hardly no excuse for drivers to leave a truck occupying the main-traveled portion of the highway at night without at least observing the simple precaution the law imposes on them of having a front and tail light burning to warn the traveling public of the danger thereby created. The courts of this state have almost invariably held the driver who fails in this important duty guilty of gross and sometimes criminal negligence. There are a few extraordinary cases where it was shown that the driver, having done all that could be expected of a reasonable man in the way of correcting the trouble with his lights after something had gone wrong with them, was held faultless in this respect, but even then he was held charged with the duty of giving some other warning or signal of the presence of his truck on the road. In this case there was no excuse whatever for any lack of precaution, as the truck had been stopped several minutes, the lights were working, and besides there was an extra person with the driver who could have assisted in giving warning to approaching traffic. The two men testify that they flashed the lights as they saw automobiles approaching them from either direction, but the proof is positive that just a few seconds before Goodwin ran into the truck from the rear another car which had passed by it coming from the opposite direction did not see any lights on it at all. Aside from the question of lights, there seems to be no reason, moreover, why the truck could not have been removed from the paved portion of the highway and run on the shoulder by these two men. The only trouble they speak of having was with the motor. There was nothing wrong with the wheels, and therefore the case is not of the class in which the excuse for not removing the vehicle from the traveled portion of the road was because of a broken wheel.

We have but little hesitancy in agreeing with the trial judge on the question of the negligence of the truck driver, and must then find the solution of the controversy on the plea of contributory negligence charged against Goodwin, the driver of the car which ran into the truck.

The truck was parked on the paved highway, facing east, and Goodwin, driving a new Buick coupé was going in the same direction. The highway at that point, according to Goodwin, is straight. His car was equipped with four-wheel mechanical brakes, which he says had been recently tested and were in good condition. His headlights, as well as he remembers, were "in good shape," and under ordinary conditions when they were working well he says that he was able to see an object two or three hundred feet away. There was nothing unusual about the weather condition that night unless the cloudiness and cold which he refers to made it unusual. But cloudiness tends to make the night darker than usual, and we think it can safely be said that the experience of automobile drivers is that the darker it is the clearer becomes the vision from the headlights of an automobile at night. Plaintiff speaks of the shadow on the road from trees along the highway, but it is somewhat difficult to understand how the trees could have thrown a shadow on a dark night, and especially when there was no moonlight, as he himself says there was not.

Notwithstanding the atmospheric and other conditions existing on the night of the accident and the fact that ordinarily the headlights of his automobile, which were "in good shape," illuminated the road some two or three hundred feet ahead of him, it is Goodwin's testimony that he did not see the parked truck on the road until he was within forty-five or fifty feet from it.

Our State Highway Regulatory Act, Act No. 21 of 1932, requires that every vehicle that is operated on the public highways of this state between one-half hour after sunset and one-half hour before sunrise shall be equipped with burning headlights of sufficient strength to render clearly discernable any person on the highway for a distance of two hundred feet ahead. Section 9(g) 1. The headlights on the Goodwin car, according to his own statement, were in "good shape," which we take to mean that they complied with the requirements of the statute and projected a beam some two hundred feet or more ahead of him. Why, in the absence of any unusual conditions, Goodwin did not see

that truck, several times the size of an ordinary person, on the highway ahead of him, until he was within fifty feet of it, has not been satisfactorily explained. Counsel for the Travelers Insurance Company, the real plaintiff in the case now, urges as an excuse, and the district judge seems to have agreed with them to some extent, the fact that the form of construction of the trailer of the truck, it being made with slats instead of a solid body,. painted a sombre hue and the top being covered with a tarpaulin, together with the shadow of the trees, caused the whole to blend closely with the road, and made it imperceptible until one driving an automobile toward it was almost upon it, and that this accounted for Goodwin's failure to have seen it in time to stop or pass around it. But Goodwin himself says nothing about shadows on the road interfering with his vision. When asked to state what happened on the night of the accident, he says: "It was about nine o'clock—nine thirty, on February the ninth, driving east from Sulphur, about three miles. I was on my way to Geismar, Louisiana. I intended to come into Lake Charles and spend the night in Lake Charles. The night was cloudy and cold. However, the pavement was dry. The lights on my car, as well as I remember were functioning all right. I was driving carefully and on my side of the highway, when suddenly I came upon this truck—it loomed up before me. I was too near the truck to avoid a collision." On cross-examination, after stating that under ordinary conditions, with his headlights working correctly, he could see an object two or three hundred feet away, he again says that he did not see this truck until he got within about fifty feet from it. The following question, with the suggestion therein prompted by counsel for the Travelers Insurance Company themselves, is then asked him: "And you account for that by the fact that it kinder blended into the shade of the trees or something—Just how do you account for that?" His answer is: "I can't account for it. It had no lights on it. I couldn't see it and it loomed right up before me." It is a well-recognized principle in cases of this kind that an automobile driver is held to have seen an object which he should have seen in time to avoid running into it, and, if Goodwin should have seen this truck at a distance of two hundred feet ahead of him and did not see it until he was within fifty feet

from it, he is bound, in the absence of a better explanation than the one he offers, to be held negligent.

From the provisions of our state statute already referred to, and provisions of a similar import from statutes in other states, there has been formulated in the jurisprudence a rule to the effect that the driver of an automobile on the public highways at night must keep his car under such control as to be able to bring it to a complete stop within the distance which his headlights project in front of him. This court has held in certain cases that this was not an inflexible rule, and that its application depends on the facts and circumstances arising in each case. In certain cases cited by the district judge as authority in this case, because of the peculiar facts, the rule was relaxed and the driver of the automobile was held free of negligence. These are the cases of Futch v. Addison, 12 La.App. 535, 126 So. 590; Stafford v. Nelson Bros., 15 La.App. 51, 130 So. 234; Hanno v. Motor Freight Lines, Inc., 17 La.App. 62, 134 So. 317. In all three of these cases, however, it was shown that the driver of the automobile was going at a moderate rate of speed, and that, as he approached the parked object on the highway, he became suddenly and temporarily blinded by the glaring headlights of another car coming from the opposite direction. The unexpected emergency thus created stood as the important and determining factor in especially two of those cases. In the absence of any such emergency, the present case is readily distinguishable from those referred to. It is to be observed, moreover, that this court in a recent case has gone far in the direction of holding the driver guilty of contributory negligence without regard to the emergency created by dazzling lights from another car, holding that it is his duty to have his car under control in such a situation as to be able to stop it "in a moment." See Blahut v. McCahil et al. (La.App.) 163 So. 195. The writer of this opinion is not ready to subscribe to some of the propositions as laid down in the opinion in that case, but, as the important features which govern them are not presented here, it is unnecessary to make further comment. Suffice it to say that, as in this case there appears to have been nothing whatever to obstruct Goodwin's vision two hundred feet ahead of him and no reason has been shown why

he should not have seen the truck in time to have stopped his car or else driven on the side of it to avoid striking it, we believe that he is chargeable with contributory negligence, and consequently the Travelers Company which stands as plaintiff herein in his stead cannot recover.

The judgment appealed from is erroneous and will have to be reversed.

It is, for the reasons stated, ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, reversed, set aside, and annulled, and it is now ordered, adjudged, and decreed that there be judgment against the Travelers Insurance Company, standing as party plaintiff herein and in favor of the defendants, Gaston Theriot and Commercial Standard Insurance Company, dismissing the suit of the said Travelers Insurance Company and rejecting its demand at its costs.

OTT, J., did not participate.