## KIRK v. UNITED GAS PUBLIC SERVICE CO.

### No. 1548.

Court of Appeal of Louisiana. First Circuit. Feb. 20, 1936.

Pujo, Bell & Hardin, of Lake Charles, for appellant.

Griffin T. Hawkins, of Lake Charles, for appellee.

LE BLANC, Judge.

On December 26, 1933, at about 10:30 at night, plaintiff's automobile, which at the time was being driven by his stepson, W. M. Lambert, on the paved highway route known as the Old Spanish Trail, between the town of Sulphur and Lake Charles, ran over the body of a dead calf or yearling which was lying on the paved portion of the road in the path of automobile traffic. As a result of the collision, the car turned completely over and was so badly damaged that it would have been useless to repair it.

Shortly before the accident, J. Nelson Greer, an employee of the defendant, driving one of its automobiles, had hit a cow or calf at or near the same spot on the highway. This is not disputed.

Plaintiff claims that the calf which was hit by Greer was the same that was lying dead on the highway and which his car ran over, and that it was through the negligence of this employee of the defendant, who was at the moment engaged in the performance of his duty for his master, in not removing this obstruction from off the highway or not posting a guard to warn approaching traffic of the danger occasioned thereby, that he suffered the loss of his automobile, and therefore is entitled to recover the damages he prays for in this suit in the sum of $1,012.

The defense presents two issues which usually arise in cases of this character: First, the negligence of the defendant or its agent in leaving an obstruction on the public highway, it being denied in this case that defendant's employee even killed the calf; and, second, a plea of contributory negligence on the part of the driver of the damaged automobile which collided with the obstruction. This latter plea is based on the alleged excessive rate of speed at which plaintiff's car was being driven and the failure of the driver to have kept a proper lookout.

The trial court rendered judgment in favor of the plaintiff in the sum of $871, and defendant appealed.

The testimony of Greer, defendant's employee, with reference to the killing of the calf, appears improbable and does not strongly recommend itself to the court. The fact that he did run into a calf at about the same place on the highway not long before the accident, when considered in connection with other facts and circumstances which appear from the testimony, leaves but little doubt that the dead calf which plaintiff's car ran over was the very same one which he admits having struck. He claims that the cow he struck was knocked off into the ditch along the highway and ran on down in the ditch in the opposite direction from which it was going. He says that he struck it near the center of the paved portion of the road, slightly to the right of the black line in the middle of the pavement, and that the blow was on the rear or flank of the cow. He says that there were two cows on the road at the time coming toward him; that he succeeded in passing by the first by turning to his left, but, in doing so, ran into the second. There seems to us to be some inconsistency here in his testimony in relation to the place on the paved portion of the road where he struck the second cow and his having turned to his left just before that in order to avoid running into the first. Moreover, he says that he was going at forty miles an hour, and that the impact with the cow broke in the radiator on his car, broke the glass in the side door, denting part of the door, broke one of the lights, and bent a fender. An impact with a young cow or calf sufficient to cause that much damage to an automobile must have been of such force as to knock the calf down, if not kill it. At any rate, it is very doubtful that it would have been left with sufficient strength to be able to run down into the ditch along the road, as Greer claims this one did.

After carefully analyzing the facts and circumstances on this point in the case, the learned district judge announced his conclusion as follows:

"The facts that a yearling was struck by Greer at about the time and at the place where plaintiff's car collided with a dead yearling, viewed in the light of the fact that a car travelling forty miles an hour, and colliding with a yearling would in all probability either kill or cripple it, are sufficient to establish the fact that Greer killed the yearling which plaintiff's son subsequently ran into.

"The plaintiff in a civil case need only establish his case by a preponderance of the evidence, and he is under no obligation to prove his case beyond a reasonable doubt."

■ We agree with him in this conclusion, and are satisfied that this defendant's employee was the one who, after killing the calf, negligently left its carcass on the highway, thus causing the obstruction on the paved portion of the road and over which the plaintiff's car ran. His duty was either to remove it from the traveled portion of the road or to provide some warning to the traffic on the highway of its presence there. Failing in this, he is bound to be held negligent, and his employer is answerable therefor.

The important and determining issue in the case arises out of the plea of contributory negligence on the part of young Lambert, the driver of plaintiff's car, in driving at an excessive rate of speed, in not keeping a proper lookout, and in not having his car under such control as to be able to stop it in time after seeing the dead animal and avoid running over it.

■■ On this branch of the case we find ourselves forced to disagree with the district judge. In disposing of the plea, he stated, in his written reasons for judgment: "The defendant was unable to offer any evidence in support of its contention that plaintiff's step-son was guilty of contributory negligence. The testimony of plaintiff's step-son and his three companions was to the effect that his speed at the time of the accident was reasonable, and that the car was at that time being driven properly."

The testimony of these witnesses as to the time it took them to ride around Lake Charles and then out to a roadhouse or night club eight miles distant and back to the place of the accident, is not any more impressive to us than that of Greer in regard to the killing of the calf. They do not satisfactorily account for the time they took after leaving Lake Charles to go to this night club and get back to the place of the accident. They did not remain at the club any time, not even waiting for the service they had ordered from the car, and yet, according to them all, nearly a whole hour was consumed in covering these eight or ten miles. That makes their testimony in regard to the speed of the au-

tomobile appear improbable. Besides, there is some rather convincing testimony in the record which in a way impeaches that of one of these witnesses and from which she is said to have admitted that they were traveling at a rate of speed far in excess of what they testified to on the witness stand.

But, accepting the rate stated by them, that is, from forty to forty-five miles an hour, it still becomes of importance to determine why the driver of the car did not see this dead yearling lying immediately in his path on the highway. The road was straight and level. The night was dark, and this is ordinarily conducive to good vision when the lights of an automobile are in good condition. There is no evidence that those on plaintiff's car were not, and, as it was a new car, we assume that they conformed to the standard and illumined the road two hundred feet ahead of the driver.

Those features such as glaring headlights from another car approaching from the opposite direction, blinding sheets of rain, a cloud of dust, or a fog bank which have been held to absolve a driver from negligence in a few cases, are entirely lacking. In their stead, plaintiff by his pleadings and certain testimony has attempted to show that, because of the dark color of the dead animal which blended with the color of the pavement, there was an extraordinary condition or emergency presented under which the driver of the car was unable to see the obstruction in time to apprehend the danger and avoid colliding with it. It is said that there were some black spots in the road caused by repairing the pavement which blended with the color of the dead calf, and it was impossible to distinguish one from the other. It is difficult to understand however, how even the condition described could have prevented the headlights of the automobile from throwing its beams on the dead animal whose body not only extended across a good part of the right lane of traffic on the pavement on which plaintiff's son was driving, but also rose several inches above the surface of the pavement. Because of its bulk, we would hardly think that the carcass of a yearling could be taken for an ordinary spot or hole in the pavement by an ordinarily prudent driver of an automobile at night. Blashfield's Cyclopedia of Automobile Law and Practice, vol. 5, p. 449, par. 3318, states: "The general rule is that a driver is held to the duty of observing objects on the highway and to drive at such speed as to be able to stop within the range of his lights, but this rule does not apply to holes or bumps in the road. The reason is that a hole often cannot be distinguished from the surface, except at short range."

The bumps referred to are obviously the ordinary bumps rising slightly above the surface of the road and which are more or less permanent, and are not, in our opinion, to be compared, as an obstruction, to the body of a dead cow or grown calf stretched across the larger part of one of the lanes of travel of the highway.

We had occasion very recently to consider a case involving a collision by an automobile with the rear end of a parked truck left without warning on the road at night. As in this case, there were none of the features such as dazzling lights, fog, dust, etc., which might have interfered with the vision of the driver of the car which ran into the truck. An attempt was made, as here also, to show that the color of the truck blended with the shade of the trees along the highway and made it almost impossible for the driver to see it until he was almost upon it. Under the facts found, the theory was rejected in that case. That was the case of Goodwin v. Gaston Theriot et al. (La.App.) 165 So. 342. We there held, there being nothing to interfere with his vision, that the driver of the car was guilty of contributory negligence in having failed to see the truck in time, as he should have seen it, and in not having his car under such control as to stop it within the distance illuminated by the headlights of his automobile. In this case, as in that, no satisfactory explanation has been given for the failure of the driver of plaintiff's car to have seen the body of the dead animal in time to have passed to the left of it or stop his car before running over it. He either was driving too fast or did not have his automobile under proper control to stop it within the range of vision afforded by his headlights or else he was not keeping a proper lookout. In either event, he was guilty of contributory negligence, and his negligence of course bars his father's recovery for the damage claimed against the defendant.

It is, for the reasons stated, ordered, adjudged, and decreed that the judgment appealed from be set aside, avoided, and reversed, and it is further ordered, adjudg-

ed, and decreed that there be judgment rejecting the plaintiff's demand and dismissing his suit at his costs.