**BROUSSARD v. KRAUSE & MANAGAN, Inc., et al.**

**No. 1920.**

Court of Appeal of Louisiana. First Circuit.

Feb. 15, 1939.

Otto J. Mestayer, of New Iberia, for appellant.

Pujo, Hardin & Porter, of Lake Charles, and C. Arthur Provost, of New Iberia, for appellees.

Le BLANC, Judge.

This is a suit for damages for personal injuries sustained by the plaintiff in an accident which occurred at about 8 o'clock on the night of May 26, 1936, when his car, which he was driving, collided with one or more parked trucks on a gravel road running between New Iberia and Loreauville, in the Parish of Iberia. The demand which is made against three defendants, in solido, is for the sum of $4007, including an item of $144 for repair of his car which plaintiff claims was damaged to that extent.

The defendants are Krause and Managan, Inc., John W. Clarke and A. J. Moody, Jr. Krause and Managan, Inc., had contracted to sell and deliver a lot of lumber to the Texas Company at the Little Bayou Oil Field in Iberia Parish and then agreed with John W. Clarke to fill the contract for them. Clarke in turn entered into an agreement with A. J. Moody, Jr., to haul and deliver some of the lumber, both of these parties using trucks to make delivery.

The road leading to the oil field is a dirt road running east from the New Iberia-Loreauville gravel road which runs north and south. On the night of the accident plaintiff was driving south on the gravel road and on approaching the point where the dirt road intersects it, he alleges in his petition that the headlights of one of the trucks belonging to one of the defendants, which was parked on the east side of the gravel road interfered with his seeing another of the trucks which was diagonally across the road, without any lights burning, and despite all diligence on his part he was unable to stop his car before running into the trailer of this latter truck. He charges negligence against all three defendants in the following particulars: (1) In parking a truck on the right hand side of the road, with glaring headlights which blinded him; (2) in hauling trucks and trailers across a highway in disregard of approaching traffic, and (3) in failing to have lights burning on the trailer with which he collided.

Various exceptions were filed by all three defendants, all of which were overruled, whereupon they each filed a separate answer.

Krause and Managan, Inc., denied liability primarily on the ground that they had sub-contracted the order for lumber to John W. Clarke who was to furnish and deliver the same to the purchaser, the Texas Company and that it had no connection with nor any control or supervision over any of the trucks used in its delivery which were involved in the accident.

The defendant Clarke in turn set out that he had contracted with the defendant Moody to assist in the hauling and delivery of the lumber and that Moody furnished his own trucks for that purpose and operated them under his own supervision and direction and without any control or suggestion from him. He admits that he used one of his own trucks in hauling the lumber, but avers that the same was not involved in the accident in which plaintiff was injured.

Defendant Moody, in effect, admitted that the conditions relating to the delivery of the lumber were as set out by the two other defendants, but like them, he denies that the accident occurred because of any negligence on the part of any of them.

In the alternative all three defendants plead contributory negligence on the part of the plaintiff in (1), driving in a reckless and dangerous manner at a speed of 40 miles per hour which was entirely unsafe in view of the conditions existing on the highway at the time of the accident and of his own admission that he was blinded by the headlights of one of the trucks as he approached it; (2) in driving his own car with headlights which were dim and afforded him visibility for only 20 or 30 feet, and (3) in failing to stop or bring his car under proper control when blinded by the headlights of one of the trucks in order to meet the emergency which he contends had been created through the negligence of the defendants.

On the issues as thus presented to him, the district judge rendered judgment in favor of the defendants dismissing the plaintiff's suit on the ground that he was guilty of contributory negligence and the latter has appealed.

The exception of no right and no cause of action is again urged before this Court by all three defendants who contend that under plaintiff's own allegations to the effect that he continued to drive his car at a speed of 25 miles per hour even after he had become blinded by the glaring headlights of one of the trucks, he was negli-

gent as a matter of law, because, it is urged, under 'certain decisions of the Courts in this State it has been held that the driver of an automobile has no right to assume that the road before him is clear and if, when driving at night he becomes blinded by the lights of a car approaching from the opposite direction, he must keep his car under such control as to be able to stop it instantly or immediately. In one of the cases decided by the Supreme Court of this State which is cited by the defendants in support of their exception, Woodley & Collins v. Schusters' Wholesale Produce Company, 170 La. 527, 128 So. 469, 470, the Court merely stated it as a *general* rule that the driver of an automobile under the circumstances stated is guilty of negligence, and it is rather significant to note that in the sentence preceding that statement, the Court said, "Whether it should be deemed negligence for the driver of an automobile to fail to slow down, in a case like this, depends so much upon the circumstances of the particular case that *it is not easy nor safe to lay down a hard and fast rule on the subject.*" (Italics ours.) In the case of Kirk v. United Gas Public Service Company, 185 La. 580, 170 So. 1, the Supreme Court quoted with apparent approval the following ruling from Blashfield Cyclopedia of Automobile Law and Practice, Permanent Edition, Vol. 5, page 455, Section 3320: "In the absence of notice to the contrary, there are certain assumptions which may be indulged by a motorist as to the condition of public streets and highways, whether he be traveling by day or by night. Among these are: (a) that the way is reasonably safe for travel and free from defects and unlawful obstructions." The Court then goes on to state that the rule as stated prevails in this State as laid down as follows in Jacobs v. Jacobs, 141 La. 272, 74 So. 992, 997, L.R.A.1917F, 253: "The rule is well established in the jurisprudence of this state that a person using a public highway * * * has a right to presume and act upon the presumption, that the way is safe for ordinary travel, even at night."

Whilst it is true that in some cases cited by defendants the Courts have dismissed an action of this nature on an exception of no cause of action, it appears in everyone, that the allegations of the petition affirmatively showed that the plaintiff's own negligence was the proxi-

mate cause of the accident. Typical of that class of cases is a decision of this Court, Inman v. Silver Fleet of Memphis et al., 175 So. 436. The allegations made by the plaintiff in that case are quoted a bit extensively in the opinion and the petition, as a whole, showed a case of gross negligence on the part of the plaintiff. This negligence, as was held, was the proximate cause of the accident. On its face the petition in the present case does not show such negligence and in view of the statement which we have quoted from the decision of the Supreme Court in the case of Woodley & Collins v. Schusters' Wholesale Produce Company, supra, and the rule as announced in Jacobs v. Jacobs, supra, and reaffirmed in Kirk v. United Gas Service Company, supra, we conclude that the lower court correctly overruled the exception of no cause of action and heard the case on the merits.

The testimony reveals that in April or May 1936, Krause and Managan, Inc., had contracted to sell to the Texas Company a bill of lumber. The lumber was to be delivered to the purchaser at Little Bayou Oil Field. As Krause and Managan, Inc., found it cheaper and more convenient to handle it that way, they bought the lumber from John W. Clarke f. o. b. Eunice, Louisiana to be delivered by him to the job location at Little Bayou Oil Field. Not having enough trucks of his own to make deliveries, Clarke contracted with A. J. Moody, Jr., who is also referred to as Lon Moody, to use two of his trucks in helping him. Moody operated his trucks entirely independently of Clarke.

The dirt road leading to the oil field from the gravel highway became very bad and it soon became impossible for the trucks to go through with their loads of lumber. This information was imparted by Mrs. John W. Clarke to Krause and Managan, Inc. who communicated with the Texas Company and as a result the services of D. C. Bonnet who owned a tractor were engaged to convey the trucks from the gravel road to the oil field and back. Bonnett charged for his work by the hour and the amount was ultimately charged to and paid by Krause and Managan, Inc. but it is shown that the latter had nothing whatever to do with the manner in which the work was done.

Under the situation as shown it seems clear that the defendant Krause and Managan had nothing whatever to do with

the delivery of the lumber and therefore could have no possible connection with the accident in which plaintiff was injured. There can be no liability on their part and as Bonnet is not a party defendant it would seem that the question of liability, if any, lies between either of the two other defendants or on the part of both of them.

Both Moody trucks and the Clarke truck were at the scene of the accident. Bonnet's tractor had just hauled the Clarke truck and one of the Moody trucks back to the gravel highway and the other Moody truck which was still loaded was parked on the east side of the highway awaiting to be conveyed over the dirt road. The place which these trucks occupied on the gravel highway at the moment is a disputed point in the case and so is the one with regard to the manner in which the lights on any of them were burning. It is admitted however that the headlights were burning on the parked Moody truck which was facing north, and therefore the direction from which plaintiff was approaching, and as we understand the testimony further there was a pickup truck belonging to someone else also parked on the east side of the gravel road north of the intersecting dirt road however, the headlights on which were also burning facing the north.

We believe that the decided preponderance of testimony is to the effect that the empty trucks which had been returned to the gravel road had already been placed horizontally with the west side of that road, a few feet from the ditch, facing south and that the rear end of the Moody truck, which was behind the Clarke truck stood about fifty feet south of the intersecting point of the dirt road. The Clarke truck was anywhere from fifty to seventy-five yards further south. The tractor which had finished placing these two trucks, had crossed the road and was back of the loaded Moody truck getting ready to convey that truck over to the oil field. The front end of this truck was about even with the rear end of the trailer attached to the empty truck on the opposite side of the road. We are of the opinion also that the testimony shows that there were no lights showing from either the sides or the rear end of the empty trucks and trailers.

Under a situation such as was created by the movement of these trucks we can readily agree with the contention made that the driver of a car approaching them from the north could easily be blinded by the shining lights on the truck facing that direction as well as the lights on the pickup truck, and that the other trucks parked on the opposite side of the road in the dark and without any sign of light or other signal, would be momentarily obscured from his vision. When anyone creates a situation on the highway which becomes a menace to the traffic using the same in the ordinary and customary manner, he is held to the strict responsibility of giving proper and sufficient warning of the danger involved. With regard to the operators of certain motor vehicles, this duty, even upon merely bringing the vehicle to a stop on the highway has been formulated into a law which requires them to display lighted flares on the side of the parked vehicle on the inside of the road and one also one hundred feet distant from both the front and rear ends. Act 164 of 1936. It has frequently been held prior to the enactment of that Statute and since, that failure to display the tail light or some other form of warning on a truck or other vehicle that is parked on the highway at night, constitutes negligence, and following that ruling, we have to hold those of the defendants' employees in charge of the trucks involved in the accident in this case guilty of some negligence and their employers should be made to respond in damages to the plaintiff unless it has been shown that the latter himself was guilty of such contributory negligence as may be said to have been the proximate cause of the accident.

Under the plaintiff's own testimony he was driving at a speed of 40 miles as he approached a curve in the highway, which by agreement of counsel is placed at a distance 1000 ft. north of the point where the accident took place. Plaintiff had received a message that his wife who was ill in a hospital in New Iberia was gravely sick and he being on his way to her bedside we can readily understand that when he said he was going at a speed of 40 miles he was estimating it as low as he conscientiously could. He says that he reduced it to 25 miles as he entered the curve but on emerging, he again regained the same stride of 40 miles. From that point the road is straight and there was nothing it appears that could have obstructed his view of the trucks parked on the east side of the highway and whose lights were facing him. In fact these lights are what

he claims blinded him and obscured his vision of the trucks parked on the west side of the road. He states that when he saw the lights he slowed down again to 25 miles an hour but is very indefinite and evasive in stating at about what distance it was from the point of the accident that he became blinded. There is testimony to the effect that the wind-shield on his car was blurred and had patches on it. In order to show the uncertainty of his testimony on this important point we reproduce the following from the note of evidence:

"Q. How far were you from the point of the accident when these lights blinded you? A. I don't know how far I was.

"Q. How far were you from the point of the accident when you were blinded by the lights of those trucks on the East? A. I don't know how far I was.

"Q. One hundred feet? A. No, I was not that far..

"Q. Fifty feet? A. The first one kept me from seeing the truck. It was dark where the other one was.

"Q. How far were you from the point of collision when you were first blinded by the lights of the car on the East? A. I was not blinded.

"Q. Didn't they bother you? A. They just kept me from seeing.

"Q. I mean you were blinded when you saw those lights on the East, and that interfered with you, how far was that from the point where you had the collision? A. I don't know.

"Q. Two hundred feet? A. I don't know.

"Q. About how far were you from this trailer when you saw those lights which interfered with you first? A. About twenty feet, I believe.

"Q. Do you mean to say that you were blinded by the lights of the car on the left when you were twenty feet from this unlighted trailer? A. I told you about."

■■ Surely that is not a satisfactory explanation of how the driver of an automobile seeking damages in a case like this should have appreciated the situation which confronted him nor is there a sufficient explanation on his part of what he did in order to avert the accident. There is an evasiveness in his testimony which leaves us in serious doubt that he took any precaution whatever to meet the emergency which faced him. The only thing he seems to be certain of is that he slowed down to 25 miles, but continued at that speed until the moment of the impact. That was not sufficient in view of the well established rule that under circumstances such as presented themselves to him, the driver of an automobile must bring his car under such control as to be able to stop it within the distance which his headlights project in front of him. We feel compelled to agree with the district judge that plaintiff's own contributory negligence was the proximate cause of the accident and that he can not recover. Hobgood v. Louisville & A. Railway Company, La.App., 156 So. 657; Goodwin v. Theriot et al., La.App., 165 So. 342; Clifton v. Dean, La.App., 169. So. 788.

In certain cases in which the driver of a car was blinded by the glaring headlights of another car which was approaching him from the opposite direction in which he was travelling as he emerged out of a curve, or where the two cars met in such close proximity to an unlighted parked truck on the highway that the blinding occurred when it was altogether impossible for him to stop his car in time to avoid running into the parked truck, he was relieved of the charge of contributory negligence on the ground that his negligence was not the proximate cause of the accident. Futch v. Addison, 12 La. App. 535, 126 So. 590; Hanno v. Motor Freight Lines, 17 La.App. 62, 134 So. 317; Holcomb v. Perry, 19 La.App. 11, 138 So. 692. But here we have none of the distinguishing features presented in any of those cases. The blinding lights were on trucks which were stationary at the time and the road was perfectly straight for a distance of 1000 feet ahead. As plaintiff's vision became obscured because of those lights it must have been at a moment when he was far enough to have apprehended danger and to take proper steps to meet it. He did nothing more, by his own admission, than to reduce his speed from 40 to 25 miles an hour, and this in spite of his further admission that the lights on his own car afforded him but 100 feet of vision in front of him. Ordinary prudence should have prompted him to do more than that in order to meet the emergency and his failure in that respect may well be said to have been the proximate cause of the accident in which he sustained the injuries he complains of.

His own contributory negligence bars his recovery and we therefore affirm the judgment of the district court which rejected his demand and dismissed his suit.

Judgment affirmed.