LAND, J.
This is an action to recover damages for personal injuries.
There was a judgment in favor of the plaintiff for $2,500, and defendant has appealed.
Plaintiff, a man 52 years of age, was struck by the pilot of the locomotive when crossing the track of defendant company in the village of Sibley, sometimes called Lanes-ville.
Plaintiff was struck on the left leg, which was fractured above the ankle.
It appears that, when the collision took place, plaintiff had nearly crossed ihe track; his right foot being beyond the rail. In a second, or a fraction of a second, he would have been safe from danger.
The place of accident was directly in front of the store or shop of the Lanesville Mercantile Company. The distance from the front door of the building to the end of the ties was 12 feet, and to the rail 13% feet. The track of the defendant railway company coming from the south and rear makes a sharp curve at this point.
The degree of this curvature may be illustrated by the fact that a person standing one step from the front door of the building can see only 41 feet down the track. Defendant at this particular place has no right of way • beyond the ground covered by its roadbed.
Immediately beyond the track on the northwest were several buildings occupied for business purposes.
In front of the store of the mercantile company there was a passway across the track of defendant company.
This passway was constantly used by the public.
Plaintiff was employed as a clerk in the store of the mercantile company, and on the morning of the accident crossed the track for the purpose of seeing the driver of the mail wagon and getting him to carry a large side of meat to another store belonging to the same company.
On returning plaintiff looked down the track and saw nothing. He then crossed over to the store, and, getting the side of meat, which had been put in a sack, raised it with both hands above his left shoulder, and,. *792 ■one step from the door,' turned and looked down the track. He saw nothing, and proceeded immediately along the usual passway across the track. He did not stop and look again before stepping on the track, and in endeavoring to cross was struck and injured as already stated.
Plaintiff was hard of hearing to the extent that he had to use an ear trumpet. The sack of meat, carried as it was, prevented him from turning his head and looking down the track as he walked along. Plaintiff did not look at the proper time and place, and candidly admits that, if he had stopped and looked short of the track, he would not have been injured.
Plaintiff was guilty of negligence, and the question is whether defendant’s servants ■could by ordinary care have avoided the consequences of his negligence.
It appears that defendant’s road is not the ordinary freight and passenger railways. Its principal traffic is in lumber, and it carries passengers in the caboose attached to its freight trains. Defendant’s railway connects with the Vicksburg, Shreveport & Pacific and the Louisiana & Arkansas Railway at Sibley Junction.
On the morning in question defendant’s train had made its regular run to and from the depot of the Vicksburg, Shreveport & Pacific Railway, and a part of the train, consisting of a locomotive and tender, a box car, and a caboose, was coming back towards the depot. On this train were an engineer, fireman, and two brakemen.
Abe Hess, the head brakeman, was standing on the pilot of the engine. Hess did not see plaintiff until he stepped on the track, ■some 15 or 20 feet in front of the pilot. Hess shouted, but plaintiff paid no attention, and was struck as he was in the act of stepping off on the far side.
The train was running 4 or 5 miles an hour. Hess was looking at the Vicksburg, Shreveport & Pacific train coming- in, and did not see plaintiff coming from the store. As the pilot struck plaintiff, Hess in his excitement jumped off and ran 30 or 40 feet down the track. When Hess stopped and turned, he saw the plaintiff lying on the ground back of the pilot, and about the gangway or step or cab of the engine.
The foregoing is a synopsis of the material part of Hess’ testimony. He and other witnesses stated that plaintiff on several occasions had been warned off the track when trains were approaching.
The substance of the testimony of Charles Matterson, the engineer, as far as pertinent to the inquiry, may be epitomized as follows:
The train in his charge was running without steam downgrade, and the fireman was ringing- the bell. The speed was 3 or 3% miles an hour. Matterson saw plaintiff coming towards the track, but could not see his face, on account of the bundle on his left shoulder, and did not recognize him. There were two pathways in front of the mercantile store; one leading across and the other leading down the track towards the Vicksburg, Shreveport & Pacific depot. These paths converged near the end of the ties, and Matter-sou could not tell whether the man was going across or down the track. As soon as Matterson saw the man cross the parallel pathway and raise his foot to step on the track, he reversed his engine and did all in his power to avert the accident. Plaintiff stepped on the track about 6 feet in front of the pilot. The train was in plain view, and plaintiff could have seen it, had he looked. Hess, who was standing on the pilot, “hollered out as loud as he could.” Matterson, coming around the curve, could not see plaintiff until he got within about 6 feet of the end of the ties. Matterson. might have stopped the locomotive in time, had he known that plaintiff was going to cross the tracks. The locomotive could have been *794 stopped within 10 or 12 feet. It actually moved 11 feet after it struck him.
The fireman testified that he was ringing the bell when the accident occurred, that the speed was not more than 5 miles an hour, and that the locomotive moved 11 feet after it struck plaintiff. The fireman was on the far side of the locomotive, and could not see the plaintiff approaching the track.
Waldron, the other brakeman, was on the front end of the caboose, and did not see the accident. He testified that the train was running at a speed of about 4 or 5 miles an hour, and stopped very suddenly, with a jar which threw him against the hand rails of the platform of the caboose. This witness did not recollect whether or not the bell was ringing at the time of the accident. He testified that there were no air brakes on the box car and caboose, but there were such brakes on the locomotive and tender.
Two of the witnesses for the defendant testified, in a general way, that they heard the ringing of the bell. Others, two of whom were standing very near the plaintiff, testified that they did not hear the bell ringing at the time of the accident.
Two expert witnesses for defendant testified that under proper conditions such a train, going 3 or 3% miles an hour, could be stopped within 8 feet.
Plaintiff and two other witnesses testified that after plaintiff was struck he was dragged 12 or 15 feet, and the evidence of Hess and others shows that he was picked up about 2G feet from the point of the pilot. This evidence tends to show that the locomotive ran from 38 to 41 feet after the collision, and from this fact it may be inferred that the speed was high, or the brakes were not timely applied, or were defective. A number of nonexpert witnesses for plaintiff testified that the speed was rapid.
But we think that the determinative issue in the case is whether the engineer could have avoided the accident after he saw, or should have seen, that the plaintiff was about to cross the track. The engineer saw a man, with a large bundle on his shoulder, coming from the store and going straight towards the track, a few feet distant. The burden he carried obscured the vision of the man and prevented his seeing the approaching train.
It was more probable that the man would attempt to cross the track than it was that he would go to the end of the ties and.then turn at a right angle down the track. Yet, with a human life in the balance, the engineer waited until the man actually raised his foot to step upon the track before he took any action whatever.
The mere sounding of the whistle when the engineer first saw the man would have saved the situation. There was probable danger, and this precaution should have been taken. In another view of the case, if the testimony of Hess be true, and he is a witness for the defendant, the engineer, after seeing the man step on the track, had 15 or 20 feet within which to stop or slacken the speed of the locomotive. The slightest diminution of speed would have prevented the accident.
We are of the opinion that under the circumstances of this particular case the engineer should have sounded the whistle, or slowed down his train, or both, when he first saw the plaintiff making for the crossing, which was dangerous at all times, owing to the curvature of the track.
We think that the evidence shows that the accident' might have been avoided by timely action of the engineer after he saw, or should have seen, the danger of the plaintiff.
The question of negligence was one of fact, and we are not prepared to say that the verdict of the jury was erroneous. Plaintiff was permanently injured and suffered great pain.
Judgment affirmed.