BROWNE v. TEXAS & P. RY. CO.
(two cases).

Nos. 5938, 5939.

Court of Appeal of Louisiana.
Second Circuit.

Nov. 3, 1939.

Rehearing Denied Jan. 5, 1940.

Writ of Certiorari and Review Denied
Feb. 2, 1940.

512

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant.

Henry W. Bethard, Jr., of Coushatta, for appellees.

HAMITER, Judge.

A freight train owned and operated by defendant struck and instantly killed Earle H. Browne, a pedestrian, near a crossing located within the village of Hanna, Louisiana, about ten o'clock of the morning of January 11, 1938. The survivors of the decedent, who are his widow, Mrs. Evelyn Browne and his 16-year old daughter, Elizabeth Claire Browne, have sued in separate proceedings to recover damages from defendant for such death. Mrs. Evelyn Browne is plaintiff in cause No. 5938, while cause No. 5939 was brought by Mrs. Evelyn Browne, natural tutrix of the minor, Elizabeth Claire Browne.

The plaintiffs attribute the unfortunate tragedy to the alleged gross negligence of defendant's employees, consisting primarily in their operation of the train at a negligent and reckless speed through a thickly populated community without concern for the welfare of the inhabitants thereof, and their failure to give prudent, customary and statutory warnings of the train's approach.

Defendant specifically denies the charge of negligence made against it, and, according to the brief of its counsel, alleges "that the death of the deceased was due to his own fault and carelessness in not making proper observations to ascertain the approach of the train as he neared the track, in not heeding the noise and alarm of the approaching train as he neared the crossing, in leaving a place of safety and walking up on the track without making proper observations or heeding the warning and putting himself in a place of danger when

the train was so close to him as to make it impossible to avoid striking him, and in failing to remove himself from a place of danger to avoid being struck, as the last clear chance to avoid injury."

In the alternative, defendant pleads that decedent was contributorily negligent by reason of his above alleged acts.

The two cases present identical questions of fact and law, and, consequently, were consolidated by agreement of counsel for all purposes.

After trial there was judgment in favor of each plaintiff for $9,000. Defendant perfected appeals from the judgments.

The village of Hanna, situated in Red River Parish, Louisiana, is unincorporated. Through it, in what we shall term a north and south direction, run defendant's railway right of way and tracks. Within the village, on each side of the right of way, and running more or less parallel therewith, is a road. The two are connected by another road that crosses the tracks at about the center of the village. This will be designated herein as crossing No. 1. The thoroughfare west of the right of way is Louisiana Highway No. 20. It is paved until the south end of the village is neared, when it becomes a graveled road, and, as such, angles southeasterly across the tracks, which point we shall term crossing No. 2, and continues in a southerly direction. The road east of the tracks, within the village, as well as the one that forms crossing No. 1, is neither paved nor graveled. Crossing No. 2 is 522 feet south of crossing No. 1. South of crossing No. 2, a distance of 1,228 feet, is Coat's crossing, and 2,612 feet farther south is Powell's crossing.

Within the village of Hanna are numerous residences, at least seven mercantile establishments, a church, a depot, a United States postoffice, and a public school. Some of said mercantile establishments, including that of J. L. Weaver, are located east of the tracks, while others, including one operated by J. W. Place, are on the west side. The depot lies east of defendant's right of way and near crossing No. 1. About 15 white families are domiciled in the immediate vicinity of Hanna. Within a radius of two miles, however, there are between 400 and 500 white and colored families. Of this group, about 350 persons receive mail at the Hanna postoffice.

At the time of the accident decedent, Mr. Earle H. Browne, enjoyed the age of 61 years, had lived in Hanna since 1927, and was engaged in several occupations, one of which was the keeping of books for the J. L. Weaver store. As his home was in the western portion of the village, he used crossing No. 1 at least four times daily in proceeding to and from his work. The only telephone in Hanna is situated in said J. L. Weaver store, and the task of locating citizens of the community with whom callers wished to talk was assumed and performed by decedent.

About ten o'clock of the morning of January 11, 1938, Mr. Browne left the Weaver establishment and proceeded by way of crossing No. 1 to the J. W. Place store for the purpose of informing Mr. or Mrs. Place about a telephone call. This store is adjacent to the dirt road leading to said crossing, and its rear end is 54 feet west of the tracks. It fronts westerly on Highway No. 20. Across the dirt road toward the south and bordering thereon is another building. Neither of the persons whom decedent sought was at the store. He left there and presumably journeyed to the Place residence which is in the northern portion of the village and west of the tracks. The house occupied by the son of Mr. and Mrs. Place is on the opposite side.

Later decedent returned to the Place store. Thereafter, he walked east along the dirt road between the two buildings; and as his view became unobstructed and he approached the right of way he was looking north in the direction of Mrs. Place, who was then on the tracks journeying from the home of her son to her own residence. Mr. Browne walked up to the crossing with his gaze continued toward the north, then faced in that direction and proceeded on and along the west end of the track's crossties toward Mrs. Place. About five steps, or from twelve to fifteen feet, on these ties had been negotiated when the engine of defendant's northbound, regular scheduled, through freight train struck him. The train, made up of 42 freight cars, was employing a speed of 40 miles per hour through the village of Hanna, this being the same rate that it ordinarily travels in the open country. The brakes were applied about the time of the impact and a stop was effected in approximately 1,200 feet.

Weather conditions during the morning were not unusual for that period of the year. It was clear and cold, with a brisk breeze from the north.

 The evidence is convincing that decedent was grossly negligent in going upon the tracks as he did and that his negligence continued until the moment of the accident. The tracks toward the south were straight for a distance of several miles, and there were no objects within 30 feet of the west side thereof to obstruct decedent's view of the approaching train. His sight and hearing were normal, and if he had looked and listened after passing the buildings, pursuant to his duty, the moving train would have been seen. Consequently, his wife and minor daughter are not entitled to recover damages for his death, unless it be determined that defendant is liable under the last clear chance or discovered peril doctrine.

 In the case of Eggleston et al. v. Louisiana & Arkansas Ry. Co. et al. 192 So. 774, 780, this day decided by us, we stated that such doctrine, under the recent jurisprudence of this state, is that "where a person negligently places himself in a perilous situation and his negligence and peril are actually discovered by the operator of the offending vehicle, or by the use of reasonable care should and could have been discovered, there is then a duty on the part of the operator to save that person from the consequences of the negligent act, if, by the exercise of due diligence, such can be done. If said operator, after the actual or constructive discovery of the existing peril, could have prevented the occurrence of an accident by the exercise of due diligence and failed to do so, such failure constitutes negligence and is considered the proximate and immediate cause of the accident and resulting injury, and the person's negligence the remote cause; and said person may recover, although his negligence continued to the moment of the accident."

 In considering the case in the light of the quoted rule, let us first ascertain what signals were given by defendant's employees in connection with the train's passage through Hanna at the stated rate of 40 miles per hour. A railway company, when operating its locomotive, is required by the provisions of section 1 of Act No. 12 of 1924, to "cause the bell to be rung or the whistle to be blown at the distance of at least three hundred yards from the place where the railroad crosses over any highway or municipal street, and the bell shall be kept ringing or the whistle shall be kept blowing continuously until said crossing is passed." One or the other of these required warnings "must continue without cessation until the crossing has been passed." Smith v. Texas & Pacific Ry. Co., La.App., 189 So. 316, 319.

Plaintiffs' witnesses testified that they heard no ringing of the locomotive's bell or blowing of its whistle after crossing No. 2 had been passed, this point being 522 feet south of crossing No. 1 near which the accident occurred. Many of them believed that the last blast of the whistle was sounded south of Coat's crossing, or more than 1,750 feet from crossing No. 1. On the other hand, the testimony of the defense witnesses is that the locomotive whistled immediately south of and also north of crossing No. 2, or the Highway 20 crossing. It is thus to be seen that a distinct conflict in the testimony exists relative to this material and important fact. Considering the evidence as a whole, we are inclined to the belief that the last signal given before the impact, either by bell or whistle, was at some point south of crossing No. 2, although we are unable to state its definite location. This belief is strengthened by several circumstances. Among these are the divergent views entertained by the defense witnesses as to the location of the locomotive when the last whistle sounded, as they claim, between crossings Nos. 2 and 1. These witnesses place it at various distances south of crossing No. 1, ranging from 30 feet up to several hundred feet. Another circumstance is that decedent made no move to avoid being struck until a moment before the impact, at which time he sought to jump to the left; and it is not contended that his death was a suicide. His hearing was normal and it seems obvious that if a blast of the whistle had occurred within 522 feet of him he would have heard and heeded it.

Important in determining the applicability here of the aforementioned doctrine is the following testimony of the locomotive fireman who was occupying a seat on the west side of the cab:

"Q. I believe you stated Mr. Browne was approaching the crossing when you

first saw him? A. He was about 5 or 6 feet from the tracks.

"Q. I believe you stated your engine was about 100 feet from Mr. Browne when you first saw him? A. Yes, sir.

"Q. Where did he go after you first saw him? A. When I first saw him he was approaching the crossing; I have duties in the cab, I looked at my steam gauge and water glass, I then looked back and was in about 50 feet of him, that is when I notified the engineer, he was walking upon the tracks.

"Q. Where was he when you first saw him? A. He was 5 feet or 6 feet from the tracks, approaching the tracks.

"Q. How long would it take an ordinary man to reach the crossing from the time you saw him? Was he walking slow or fast? A. He was walking at a moderate rate of speed.

"Q. If he was 5 or 6 feet from the tracks it would take at least two steps for him to reach the tracks? A. I suppose so."

It is to be noticed from the quoted testimony that when the locomotive was about 100 feet from crossing No. 1, the fireman observed Mr. Browne only 5 or 6 feet, or 2 steps, from the tracks and moving toward them. In view of the distance ultimately traveled by decedent along the crossties, and the speed of the train, we rather think that the locomotive was then farther from the crossing than 100 feet; however, for the purpose of this consideration the estimate given by the fireman will be used. According to the uncontradicted proof in the record, Mr. Browne, as before stated, looked continuously toward the north in the direction of Mrs. Place. After discovering the movement of decedent toward the tracks, the fireman did not cause the blowing of the whistle; instead, he gave attention to his steam gauge and water glass until 50 feet away, at which time he instructed the engineer to make application of the train brakes.

Plaintiffs do not urge that the accident could have been avoided if the brakes had been applied when the fireman first saw decedent approaching the tracks. They do strenuously contend, however, that Mr. Browne was then in a perilous situation; and if the whistle had been sounded, as duty demanded and as was possible to do,

he would have refrained from entering the train's path and been saved from the horrible death experienced. This contention appears to us to be meritorious.

The decision of the Supreme Court in Ross v. Sibley, L. B. & S. R. Co., 116 La. 789, 41 So. 93, 95, seems appropriate here. The plaintiff in that case was a pedestrian who had been struck and injured by defendant's train as he sought to traverse a crossing. Pertinent facts and the views of the court are clearly shown in the following extract from the opinion:

"But we think that the determinative issue in the case is whether the engineer could have avoided the accident after he saw, or should have seen, that the plaintiff was about to cross the track. The engineer saw a man, with a large bundle on his shoulder, coming from the store and going straight towards the track, a few feet distant. The burden he carried obscured the vision of the man and prevented his seeing the approaching train.

"It was more probable that the man would attempt to cross the track than it was that he would go to the end of the ties and then turn at a right angle down the track. Yet, with a human life in the balance, the engineer waited until the man actually raised his foot to step upon the track before he took any action whatever.

"*The mere sounding of the whistle when the engineer first saw the man would have saved the situation. There was probable danger, and this precaution should have been taken.*" (Italicizing ours.)

The general rule is, as defendant's counsel point out, that trainmen have the right to believe that a person approaching a railroad track will exercise his senses of sight and hearing so as to perceive the on-coming train in time to avoid an accident; and they may assume that the stop, look and listen requirement will be observed. This is recognized by the jurisprudence of this state, and is applied in the Eggleston v. Louisiana & Ark. Ry. Co. Case, supra, in which all appropriate and required warning signals of the train's approach were given. When a person, however, violates the duty imposed on him by the stop, look and listen rule and places himself in a perilous situation which is discovered by the trainmen, or should and could have been discovered by the use of reasonable care, it then becomes the duty

of such trainmen, under the discovered peril doctrine, to exercise all due diligence in seeking to avert an accident.

In the instant case, it is true that Mr. Browne was not on the tracks when the fireman first observed or discovered him. He was, however, only two steps away and moving in their direction with his head turned away from the train. This close proximity to the tracks and his posture and movements were sufficient to indicate to the average mind that he was unaware of the train's approach. Clearly he was in probable danger, as said in Ross v. Sibley, L. B. & S. R. Co., supra, and in a perilous situation. Under these circumstances, it was the duty of the fireman, on making his discovery, to give all available and possible warnings, and particularly to sound the whistle. This he failed to do. His failure in this respect constituted negligence which was the proximate and immediate cause of the accident. The negligence of decedent was the remote cause.

Decedent was 61 years of age and had a life expectancy of 15.47 years. In addition to holding the position of bookkeeper for the J. L. Weaver establishment, he engaged in farming and kept the books of the Natchitoches Cotton Oil Company. His income for the year 1937 was approximately $4,000. As the result of the accident he received a fractured skull with destruction of the brain tissue, a crushed chest, and fractures of the arms. Death was instantaneous and, consequently, he endured no suffering. It is our belief that, under the jurisprudence of this state, the damages allowed by the trial court are excessive in each case. The award in favor of Mrs. Browne should be reduced from $9,000 to $7,000, and that for the benefit of the minor daughter from $9,000 to $5,-000.

Accordingly, the judgment of the district court in favor of Mrs. Evelyn Browne, individually, against defendant is amended by reducing the quantum from $9,000 to $7,000; and the judgment in favor of Mrs. Evelyn Browne, natural tutrix for the minor Elizabeth Claire Browne, against defendant is amended by reducing the quantum from $9,000 to $5,-000; and, as amended, both judgments are affirmed.